No. 21-6423

_____

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT**

_____

**KEVIN YOUNGER**,

*Plaintiff-Appellee*,

**v.**

**NEIL DUPREE**,

*Defendant-Appellant*.

_____

On Appeal from the United States District Court
for the District of Maryland
(Richard D. Bennett, District Judge)

_____

**BRIEF OF APPELLANT**

_____

BRIAN E. FROSH
Attorney General of Maryland

KARL A. POTHIER
SHELLY E. MINTZ
Assistant Attorneys General
217 E. Redwood Street
Baltimore, Maryland 21202
410-230-3135
karl.pothier@maryland.gov
shelly.mintz@maryland.gov

August 25, 2021                    Attorneys for Appellant

# TABLE OF CONTENTS

Page

JURISDICTIONAL STATEMENT ......................................................................1

ISSUE PRESENTED FOR REVIEW ...................................................................3

STATEMENT OF THE CASE.............................................................................3

SUMMARY OF ARGUMENT .............................................................................7

ARGUMENT .......................................................................................................8

I.     THIS COURT REVIEWS DE NOVO THE LEGAL CONCLUSIONS ON WHICH THE JUDGMENT AND THE DISTRICT COURT'S SUMMARY JUDGMENT DECISION ARE BASED ......................................................................................8

II.    THE DISTRICT COURT ERRONEOUSLY CONCLUDED THAT THE EXISTENCE OF THE IIU INVESTIGATION EXCUSED MR. YOUNGER FROM EXHAUSTING HIS ADMINISTRATIVE REMEDIES. ...........................................................8

      A.     The PLRA Mandates Exhaustion ........................................................8

      B.     Maryland's Administrative Remedy Process Does Not Include the IIU...................................................................................................10

      C.     Administratve Remedies Were Available to Mr. Younger .................15

CONCLUSION ..................................................................................................18

CERTIFICATE OF COMPLIANCE WITH RULE 32(a) ....................................19

PERTINENT STATUTES AND REGULATIONS ...............................................20

CERTIFICATE OF SERVICE ...........................................................................26

# TABLE OF AUTHORITIES

Page

## Cases

*Belk, Inc. v. Meyer Corp.*, 679 F.3d 146 (4th Cir. 2012).......................................3, 8

*Booth v. Churner*, 532 U.S. 731 (2001)...................................................... 9, 14, 15

*Brightwell v. Hershberger*, No. DKC-11-3278,
    2016 WL 4537766 (D. Md. Aug. 31, 2016) ......................................................17

*Chesapeake Paper Prod. Co. v. Stone & Webster Eng'g Corp.*,
    51 F.3d 1229 (4th Cir. 1995) ...............................................................................2

*Custis v. Custis*, 851 F.3d 358 (4th Cir. 2017)........................................................2

*Feld v. Feld*, 688 F.3d 779 (D.C. Cir. 2012) ..........................................................2

*Germain v. Shearin*, 653 Fed. App'x 231 (4th Cir. 2016).....................................10

*Jones v. Bock*, 549 U.S. 199 (2007)........................................................................2

*McCullough v. Wittner*, 314 Md. 602 (1989) .........................................................11

*McKiver v. Murphy-Brown, LLC*, 980 F.3d 937(2020)............................................8

*Moore v. Bennette*, 517 F.3d 717 (4th Cir. 2008)...............................................9, 16

*Mitchell v. Williams*, No. WMN-14-1781,
    2016 WL 3753726 (D. Md. July 7, 2016) .........................................................17

*Nader v. Blair*, 549 F.3d 953 (4th Cir. 2008) .........................................................8

*Nguyen v. CNA Corp.*, 44 F.3d 234 (4th Cir. 1995) ...............................................8

*Oakes v. Department Pub. Safety and Corr. Servs.*, No. GLR-14-2002,
    2016 WL 6822470 (D. Md. Nov. 18, 2016) ......................................................17

*Porter v. Nussle*, 534 U.S. 516 (2002)....................................................................9

*Ross v. Blake*, 136 S. Ct. 1850 (2016) ........................................................... passim

*Varghese v. Honeywell Int'l*, 424 F.3d 411 (4th Cir. 2005) .................................2, 3

ii

*Woodford v. Ngo*, 548 U.S. 81 (2006) ................................................................9, 18

**Statutes**

28 U.S.C. § 1291 ........................................................................................1

28 U.S.C. § 1331 ........................................................................................1

28 U.S.C. § 1343 ........................................................................................1

28 U.S.C. § 1367 ........................................................................................1

42 U.S.C. § 1983 ........................................................................................1

42 U.S.C. § 1997e ...................................................................................2, 9

Md. Code Ann., Corr. Servs. § 10-202 (LexisNexis 2017) ....................................10

Md. Code Ann., Corr. Servs. § 10-206(a) (LexisNexis 2017) ...............................10

Md. Code Ann., Corr. Servs. § 10-206(b) (LexisNexis 2017) ...............................12

Md. Code Ann., Corr. Servs. § 10-207(a) (LexisNexis 2017) ...............................12

Md. Code Ann., Corr. Servs. § 10-207(b)(1) (LexisNexis 2017)............................12

Md. Code Ann., Corr. Servs. § 10-207(b)(2)(ii) (LexisNexis 2017)......................13

Md. Code Ann., Corr. Servs. § 10-207(c) (LexisNexis 2017) ...............................12

Md. Code Ann., Corr. Servs. § 10-209(a) (LexisNexis 2017) ...............................12

Md. Code Ann., Corr. Servs. § 10-209(b)(1) (LexisNexis 2017)............................12

Md. Code Ann., Corr. Servs. § 10-209(b)(1)(ii) (LexisNexis 2017)......................13

Md. Code Ann., Corr. Servs. § 10-209(b)(2) (LexisNexis 2017)............................13

Md. Code Ann., Corr. Servs. § 10-209(c)(2) (LexisNexis 2017)............................13

Md. Code Ann., Corr. Servs. § 10-209(c)(3)(ii) (LexisNexis 2017)......................13

Md. Code Ann., Corr. Servs. § 10-210(a) (LexisNexis 2017) ...............................10

Md. Code Ann., Corr. Servs. § 10-210(b)(1) (LexisNexis 2017)............................13

Md. Code Ann., Corr. Servs. § 10-701 (LexisNexis 2017) ......................................14

Md. Code Ann., Corr. Servs. § 10-701(a)(1) (LexisNexis 2017)..........................13

Md. Code Ann., Corr. Servs. § 10-701(a)(3)(i) (LexisNexis 2017) ......................13

## Rules

Fed. R. Civ. P. 59(a)..........................................................................................7

## Regulations

COMAR 12.02.28 ...........................................................................................10

COMAR 12.07.01.01B(8)..............................................................................12

COMAR 12.07.01.06A  ..................................................................................12

COMAR 12.07.01.06B ...................................................................................12

COMAR 12.07.01.06B(4)..............................................................................12

COMAR 12.07.01.07A ...................................................................................12

COMAR 12.11.01.03 .....................................................................................13

COMAR 12.11.01.11 .....................................................................................13

No. 21-6423

———————————————

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

———————————————

## KEVIN YOUNGER,

*Plaintiff-Appellee*,

**v.**

## NEIL DUPREE,

*Defendant-Appellant*.

———————————————

On Appeal from the United States District Court
for the District of Maryland
(Richard D. Bennett, District Judge)

———————————————

## BRIEF OF APPELLANT

———————————————

## JURISDICTIONAL STATEMENT

In this action asserting claims for money damages against former correctional lieutenant Neil Dupree and others under 42 U.S.C. § 1983 and state-law tort causes of action, the district court had jurisdiction under 28 U.S.C. §§ 1331, 1343, and 1367. On February 4, 2020, the district court entered judgment against Mr. Dupree and others (J.A. 34, 36), which judgment disposed of all claims against all parties. Mr. Dupree timely appealed on March 18, 2021. (J.A. 598.) This Court has jurisdiction under 28 U.S.C. § 1291.

The district court had earlier denied Mr. Dupree's motion for summary judgment after having concluded that the administrative procedure for resolving inmate grievances was not "available" to Mr. Younger and thus was not a bar to the action under the administrative exhaustion requirements of the Prisoner Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e.  (J.A. 558-65.)[1]  This Court ordinarily "will not review, under any standard, the pretrial denial of a motion for summary judgment after a full trial and final judgment on the merits," when, as here, the issue has not been presented to the district court through a post-trial motion.  *Chesapeake Paper Prod. Co. v. Stone & Webster Eng'g Corp.*, 51 F.3d 1229, 1237 (4th Cir. 1995).  The district court ruling at issue in this appeal, however, resolved a purely legal issue and, in so doing, effectively granted the inmate-plaintiff summary judgment on that same issue.  *See Feld v. Feld*, 688 F.3d 779, 783 (D.C. Cir. 2012) (post-trial motion "not required to preserve for appeal a purely legal claim rejected at summary judgment" because nothing could have occurred at the subsequent trial "that would have required the district court to revisit its analysis").  Although this Court has previously extended *Chesapeake* to the review of a purely legal defense denied on summary judgment but not raised in a post-trial motion, *Varghese v.*

---

[1]  "[F]ailure to exhaust is an affirmative defense that the defendant must raise." *Custis v. Custis*, 851 F.3d 358, 361 (4th Cir. 2017) (citing *Jones v. Bock*, 549 U.S. 199 (2007)).

2

*Honeywell Int'l*, 424 F.3d 411, 420-23 (4th Cir. 2005), the Court subsequently clarified that the requirement that issues be preserved for appeal in a post-trial motion is "meant to preserve the judge's power to determine evidentiary sufficiency" and is "not concerned with 'pure' questions of law." *Belk, Inc. v. Meyer Corp.*, 679 F.3d 146, 161 (4th Cir. 2012); *see also Varghese*, 424 F.3d at 425 (Motz, J., dissenting, observing the expansion of *Chesapeake* to encompass questions of law is "unwise and unjust" and that "many of our sister circuits . . . have specifically refused to extend the *Chesapeake* rule the way the majority does here").

## ISSUE PRESENTED FOR REVIEW

Did the district court err in finding that the administrative remedy process was too opaque and incapable of use, and thus unavailable to the inmate-plaintiff, merely because the Internal Investigative Unit, an investigative body that has no remedial authority, had commenced its own investigation into the assault that served as the basis for the inmate-plaintiff's claim?

## STATEMENT OF THE CASE

On the morning of September 30, 2013, Correctional Sergeants Jemiah Green and Kwasi Ramsey and Correctional Officer II Richard Hanna assaulted a number of inmates in different areas of the Maryland Reception, Diagnostic & Classification Center ("MRDCC"), which is a prison operated by the Division of Correction ("DOC" or "the Division") within the Maryland Department of Public Safety and

3

Correctional Services ("the Department"). (J.A. 49.) The officers' assaults were in retaliation for the inmates' alleged participation in an attack on a correctional officer that had occurred the previous evening. (J.A. 48-49.) On October 1, 2013, the Department's Internal Investigative Unit ("IIU") launched a comprehensive investigation into the actions of the three officers and their command staff, which resulted in criminal indictments against the officers and administrative discipline of certain supervisors. (J.A. 56-57.)

One of the officers' inmate-victims was Kevin Younger. (J.A. 49-50.) In December 2013, Mr. Younger sought redress for his injuries through the three-step administrative process established to remedy inmate grievances, and on March 28, 2014, he filed a grievance with the Department's Inmate Grievance Office ("IGO"), which oversees the third step of that process. (J.A. 343-52.) After exchanging correspondence with Mr. Younger, the IGO dismissed the grievance on prelimary review because: (i) Mr. Younger neither demonstrated that he had properly exhausted the Division's administrative remedy process process ("ARP") before resorting to the IGO nor "provided a basis for waiving the ARP exhaustion requirement"; and (ii) the IGO itself could not independently verify exhaustion. (J.A. 372-73.) Mr. Younger did not seek judicial review of the IGO's decision. (J.A. 340.)

4

In 2016 Mr. Younger filed suit in federal district court against the three indicted officers along with: (i) the MRDCC Warden at the time of the incident, Tyrone Crowder; (ii) three MRDCC supervisors—Major Wallace Singletary, former Intelligence Lieutenant Neil Dupree, and Sergeant Pamela Dixon; (iii) the State of Maryland; and (iv) then Secretary of Public Safety and Correctional Services Stephen T. Moyer. (J.A. 2-7.) Following service of the complaint, the defendants moved to dismiss, and on August 22, 2017, the district court granted the motion to dismiss the State and Secretary Moyer, but denied the motion as to the remaining defendants. (J.A. 2, 7, 14, 551.) Mr. Younger then filed suit against the State in the Circuit Court for Baltimore City, and that case proceeded to trial while the district court case was stayed on February 16, 2018. (J.A. 16, 203.) On June 12, 2019, a jury in the state court case found in favor of Mr. Younger (J.A. 138, 144), and one week later the district court lifted its stay (J.A. 19).

On November 18, 2019, Mr. Dupree moved for summary judgment in the federal case, arguing, in part, that Mr. Younger's claims were barred because he failed to exhaust his administrative remedies prior to filing suit, as required by the PLRA. (J.A. 25, 558.) In support of his motion, Mr. Dupree provided the district court with materials describing the three-step administrative process that was available to Mr. Younger (J.A. 244-337), and evidence of both Mr. Younger's failed attempt to fully exhaust his claim (J.A. 340, 342-73) and fellow inmate Raymon

Lee's successful exhaustion of a claim that arose from the same incident (J.A. 340, 374-91). The records provided by Mr. Dupree regarding Mr. Lee's claim demonstrated that Mr. Lee had initiated the three-step administrative process in November 2013, and that he ultimately had received, after a hearing on the merits before an administrative law judge, an award of $5,500 in compensatory damages from the Department. (J.A. 374-91.)

Following the filing of Mr. Younger's opposition to the motion and Mr. Dupree's reply, the district court issued a Memorandum Opinion and Order on December 19, 2019, rejecting Mr. Dupree's exhaustion argument. (J.A. 557-65, 577.) The district court determined that, under Maryland's mandatory exhaustion regime, an inmate may pursue remedies either through the three-step process described in Mr. Dupree's motion or through the IIU, which the district court noted "may investigate allegations of employee misconduct, including the use of excessive force." (J.A. 560-62.) The court then concluded that, because DOC Directive ("DCD") 185-003 mandates the termination of the second step of the three-step process when there is a pending IIU investigation, pursuant to the principles advanced by the United State Supreme Court in *Ross v. Blake*, 136 S. Ct. 1850 (2016), Maryland's administrative process was "too opaque to be capable of use" and thus was "unavailable upon the commencement of [that] investigation." (J.A. 563 (internal quotations omitted).) It held, therefore, that since the IIU undisputably

6

investigated the September 30, 2013 attacks soon after they occurred, Mr. Younger had no "obligation to subject his claims to administrative exhaustion" because the "IIU investigation fully satisfie[d] the PLRA's exhaustion requirement."[2]  (J.A. 563-64.)

Mr. Younger's claims subsequently went before a jury, which returned a verdict in his favor on February 3, 2020.  (J.A. 33-34.)  The district court entered judgment against Mr. Dupree and others on February 4, 2020, and Mr. Dupree timely filed a motion for remittitur under Federal Rule of Civil Procedure 59(a).  (J.A. 34, 36, 579, 581.)  On February 17, 2021, the district court denied the motion, and Mr. Dupree timely noted this appeal on March 18, 2021.  (J.A. 39-40, 596-99.)

## SUMMARY OF ARGUMENT

In finding that administrative remedies were unavailable to Mr. Younger, the district court misinterpreted the governing law and applied the wrong legal standard. The dispositive question below was whether the administrative exhaustion regime was so opaque as to render it incapable of use.  When presented with such a question, the district court is to conduct its analysis through the lens of the ordinary prisoner, which here demonstrates that the process *was* available, as two prisoners had used

---

[2]  Because it found that the mere existence of an IIU investigation ended the exhaustion inquiry, the district court advised that it "need not resolve disputes concerning [Mr.] Younger's adherence to" the three-step administrative process. (J.A. 564.)

7

it, one to completion.  The district court instead relied on its own understanding of the exhaustion process, which it erroneously concluded ended upon the commencement of an IIU investigation that related to the inmate's claim.

## ARGUMENT

## I.    THIS COURT REVIEWS DE NOVO THE LEGAL CONCLUSIONS ON WHICH THE JUDGMENT AND THE DISTRICT COURT'S SUMMARY JUDGMENT DECSION ARE BASED.

This Court "review[s] de novo the legal conclusions upon which the district court's denial of judgment as a matter of law were premised," *Belk*, 679 F.3d at 164, which is the same standard applicable to review of the summary judgment decision upon which the judgment was based, *McKiver v. Murphy-Brown, LLC*, 980 F.3d 937, 953 (2020).  In so doing, it applies the same legal standards as the district court. *Nader v. Blair*, 549 F.3d 953, 958 (4th Cir. 2008).   "The district court should only grant a motion for summary judgment where there is no genuine dispute as to an issue of material fact, and the moving party is entitled to summary judgment as a matter of law."  *Id.* (quoting *Nguyen v. CNA Corp.*, 44 F.3d 234, 236 (4th Cir.1995)).

## II.    THE DISTRICT COURT ERRONEOUSLY CONCLUDED THAT THE EXISTENCE OF THE IIU INVESTIGATION EXCUSED MR. YOUNGER FROM EXHAUSTING HIS ADMINISTRATIVE REMEDIES.

### A.    The PLRA Mandates Exhaustion.

The PLRA requires inmates to exhaust available administrative remedies prior to filing suit against prison officials.  The PLRA provides, in pertinent part:

8

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).[3]  Exhuastion is mandatory.  *Ross*, 136 S. Ct. at 1856.  This "edict contains one significant qualifier: the remedies must indeed be 'available' to the prisoner."  *Id*.[4]  Otherwise, "a court may not excuse a failure to exhaust, even to take [special] circumstances into account."  *Id*.

"The PLRA exhaustion requirement requires proper exhaustion."  *Woodford v. Ngo*, 548 U.S. 81, 93 (2006).  "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules."  *Id*. at 91.  "[T]o be entitled to bring suit in federal court, a prisoner must have utilized all available remedies 'in accordance with the applicable procedural rules.'" *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008)) (quoting *Woodford*, 548 U.S. at 88).  Exhaustion is achieved only when the prisoner has completed every stage of the available administrative process.  *Booth v. Churner*, 532 U.S. 731, 735 (2001) (inmate failed to exhaust when

---

[3]  "[P]rison conditions" in the PLRA encompass "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

[4]  This "qualifier" is the sole "textual exception to mandatory exhaustion."  *Ross*, 136 S. Ct. at 1858.

he "never sought intermediate or final administrative review after the prison authority denied relief").

## B. Maryland's Administrative Remedy Process Does Not Include the IIU.

"In Maryland, a prisoner must generally pass through three steps before filing in federal court." *Germain v. Shearin*, 653 Fed. App'x 231, 233 (4th Cir. 2016). The first two steps occur within the DOC's own internal grievance process, the Administrative Remedy Procedure ("ARP").[5] The third step occurs before the Inmate Grievance Office ("IGO"), which is an agency in the Department that was created by the Maryland General Assembly to administratively handle and resolve, on behalf of the Department's Secretary, inmate complaints against DOC employees and officials. Md. Code Ann., Corr. Servs. §§ 10-202 (establishing IGO), 10-206(a) (authorizing IGO grievances by inmates), and 10-210(a) (providing that "[a] court may not consider an individual's grievance that is within the jurisdiction of the [IGO] . . . unless the individual has exhausted the remedies provided in this subtitle") (LexisNexis 2017). The "Secretary [has] broad discretionary remedial authority" over grievances brought before the IGO, including the "authority to award

---

[5] "In 2013 through 2014, the ARP process was governed by DCDs 185-001, 185-002, 185-003, and 185-004." (J.A. 245-46.) These DCDs define the ARP as "a mechanism for the resolution of inmate complaints for inmates housed within [the Division]," DCD 185-001 § IV.A. (J.A. 248.) The Division's ARP is now governed by regulations adopted by the Department. *See* COMAR 12.02.28.

monetary damages as long as funds are appropriated or otherwise properly available for this purpose." *McCullough v. Wittner*, 314 Md. 602, 610 (1989).

The Division's ARP provides inmates with the means to address and resolve whatever complaints they might have concerning their conditions of confinement, first with the Warden of the facility and, if still aggrieved, with the DOC Commissioner.[6] The first step of the ARP is initiated by an inmate's filing of a request for administrative remedy with the prison's warden. DCD 185-002 § V.B.1 (J.A. 252); *see also* DCD 185-003 (governing warden's handling of ARP requests) (J.A. 300-24). Should the inmate be unsatisfied with the warden's response, the inmate may then move to the second step: an appeal to the DOC Commissioner. DCD 185-002 § V.B.2 (J.A. 252); s*ee also* DCD 185-004 (governing Commissioner's handling of ARP appeals) (J.A. 326-37). Once the Commissioner has responded to the inmate's appeal, "the ARP process is ended," DCD 185-001 § IV.F. (J.A. 249), and if "not satisfied with the outcome," the inmate may then proceed to the third and final level of the administrative process by filing a claim with the IGO. DCD 185-002 § V.C. (J.A. 253.)

---

[6] The jurisdiction of the ARP is broad, as it covers virtually any claim that relates to an inmate's conditions of confinement, including staff's use of force. DCD 185-002 § VI.A. (J.A. 253.)

11

When the IGO receives an inmate grievance, it conducts a "preliminary review" of the submission. Corr. Servs. § 10-207(a); Code of Maryland Regulations ("COMAR") 12.07.01.06A.[7] "[I]f the complaint is determined to be wholly lacking in merit on its face, . . . the IGO may dismiss the complaint without a hearing or specific findings of fact." Corr. Servs. § 10-207(b)(1); *see* COMAR 12.07.01.06B (setting forth reasons for dismissal on preliminary review).[8] If the IGO does not dimiss the complaint, then it must refer the matter to the Maryland Office of Administrative Hearings, where the merits of the grievance are presented before and heard by an impartial administrative law judge ("ALJ"). Corr. Servs § 10-207(c); COMAR 12.07.01.07A.

Following that proceeding, the ALJ must generate a written decision describing the "disposition" of the claim and its supportive "findings of fact" and "conclusions of law." Corr. Servs. § 10-209(a). If the ALJ dismisses the grievance, that decision is final and concludes the administrative process. *Id*. § 10-209(b)(1). If, however, the ALJ "concludes that the complaint is wholly or partially

---

[7]    A "grievance" is a "complaint of any individual in the custody of the [Division] . . . against any officials or employees of the Division . . . arising from the circumstances of custody or confinement." COMAR 12.07.01.01B(8).

[8]    One such reason is when the inmate "did not properly exhaust administrative remedies under the [ARP]." COMAR 12.07.01.06B(4). *See* Corr. Serv. § 10-206(b) (authorizing the IGO to require ARP exhaustion by regulation).

meritorious," then the decision is sent as a proposal to the Department's Secretary, *id*. § 10-209(b)(2), who may affirm, reverse, or modify the decision or remand the matter to the ALJ, *id*. § 10-209(c)(2).[9]  "Unless the complaint is remanded, the Secretary's order constitutes the final [administrative] decision."  *Id*. § 10-209(c)(3)(ii).  The inmate may seek judicial review of the Secretary's decision, the IGO's decision to dismiss on preliminary review, or the ALJ's decision to dismiss.[10] *id*. § 10-210(b)(1).

As is evident, the Department's IIU is not a part of Maryland's three-level administrative remedy process.  Like the Division and the IGO, the IIU is an agency within the Department.[11]  Corr. Serv. § 10-701(a)(1).  Its purpose is to investigate and report about "alleged criminal violations" at the Department's facilities and "alleged "professional misconduct by employees of the Department."  *Id*. § 10-701(a)(3)(i); *see* COMAR 12.11.01.03 (further describing the scope of the IIU's investigative authority) and 12.11.01.11 (setting forth rules relating to the form,

---

[9]  "The Secretary may take any action the Secretary considers appropriate in light of the [ALJ's] findings."  Corr. Serv. § 10-209(c)(2).

[10]  A dismissal by either the IGO or the ALJ is "the final decision of the Secretary for purposes of judicial review."  Corr. Servs. §§ 10-207(b)(2)(ii), 10-209(b)(1)(ii).

[11]  In 2014, the General Assembly renamed the IIU the Intelligence and Investigative Unit and mandated that, in addition to its investigative work, it "oversee and coordinate all intelligence efforts within the Department."  2014 Md. Laws Ch. 217.

content and release of investigative reports).  The IIU has no adjudicatory or remedial function once it has finished an investigation, so it cannot provide a remedy to any grievant, including a DOC inmate who may have been the victim of the conduct it investigated.  Corr. Serv. § 10-701.  The district court was wrong, therefore, when it opined in its administrative *remedy* exhaustion analysis that, because of the IIU's existence, the "ARP process is not the only means of pursuing complaints against Maryland prison officials."  (J.A. 505); *see Booth*, 532 U.S. at 736 (observing "that some redress for a wrong is presupposed by the [PLRA]'s requirement of an 'available' 'remedy'").

The district court was similarly incorrect about the impact an IIU investigation has on an inmate's exhaustion of administrative remedies.  If an inmate initiates the process by filing a request with the facility for an administrative remedy, and "the basis of the [inmate's] complaint is the same basis of an [IIU] investigation," then the facility's manager is required to "issue a final dismissal of a request for procedural reasons."[12]  DCD 185-003 § VI.N.4. (J.A. 308.)  In so doing, the DOC requires the manager to advise the inmate as follows:

> Your request is dismissed for procedural reasons and this dismissal is final.  This issue is being investigated by IIU, case number _____.

---

[12]  The manager may also dismiss the request for a number of other procedural reasons, such as lack of jurisdiction, untimeliness, and redundancy.  DCD 185-003 § VI.N.3. (J.A. 304.)

14

Since this case shall be investigated, no further action shall be taken within the ARP process.

*Id.* § VI.N.4.b. (J.A. 308, 377.)  The institutional dismissal, therefore, concludes the ARP and the second step of the administrative process.  At this point, the inmate is required to file the claim with the IGO pursuant to the statutorily mandated third step of the administrative procedure.  And so the dismissal due to the IIU's involvement does not affect the inmate's need to pursue the claim and seek relief with the IGO. Thus, while the district court correctly determined that an IIU investigation "closes the door to the ARP" (J.A. 562 (internal quotations omitted)), it ignored the third step of the process involving the IGO when it concluded, as a matter of law, that "the IIU investigation satisfied [Mr. Younger's] obligation to subject his claims to administrative exhaustion" (J.A. 564).

## C.    Administrative Remedies Were Available to Mr. Younger.

For an administrative remedy to be "available" under the PLRA, it must, as a threshold matter, be "'capable of use' to obtain 'some relief for the action complained of.'"  *Ross*, 136 S. Ct. at 1859 (quoting *Booth*, 532 U.S. at 738).  As this Court has explained:

> Because the PLRA does not define the term ["available"], courts have generally afforded it its common meaning; thus, an administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it. Conversely, a prisoner does not exhaust all available remedies simply by failing to follow the required steps so that remedies that once were available to him no longer are.

15

*Moore*, 517 F.3d at 725 (4th Cir. 2008) (internal citations omitted).

In *Ross*, the Supreme Court identified three scenarios where an administrative remedy, "although officially on the books," may be incapable of use and, therefore, unavailable:

> (i)  "it operates as a simple dead end—with officers unable or are consistently unwilling to provide any relief to aggrieved inmates";
>
> (ii)  "the administrative scheme [is] so opaque that it becomes, practically speaking, incapable of use"; or
>
> (iii)  "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation."

136 S. Ct. at 1859-60.

The district court found administrative remedies unavailable to Mr. Younger because the interplay of the IIU with the three-step administrative process rendered the latter "too opaque to be capable of use." (J.A. 507, internal quotations omitted.) In so doing, however, the district court misunderstood the kind of opacity contemplated by the Supreme Court in *Ross*.

In the availability analysis, "opaque" means "unknowable." *Ross*, 136 S. Ct. at 1859. The question is not whether the "administrative process is susceptible of multiple reasonable interpretations," but whether an "ordinary prisoner can make sense of what it demands." *Id.* As *Ross* instructs, the questions to be asked are:

16

"were [the administrative] procedures knowable by an ordinary inmate in [plaintiff's] situation, or was the system so confusing that no such inmate could make use of it." *Id*. at 1862. Below, it was undisputed that Mr. Younger fully understood the administrative process and, in fact, utilized it to pursue his claim. (J.A. 343-73.) It was further undisputed that one of the inmates involved in the events of September 30, 2013, experienced no difficulty whatsoever understanding and negotiating the administrative process to obtain relief. (J.A. 375-91.) These facts support that the administrative process was knowable and, therefore, "available" as required by the PLRA.

The district court departed from the guidance of *Ross* and disregarded the inmates' demonstrated and successful experiences with the administrative process. Instead the court relied on its *own* confusion interpreting the administrative regime.[13] The district court's reliance on its own perception of the process runs afoul of the

---

[13] The district court did the same in two of the unreported decisions it cites as supporting authority for its holding, *Brightwell v. Hershberger*, No. DKC-11-3278, 2016 WL 4537766 (D. Md. Aug. 31, 2016), and *Oakes v. Department Pub. Safety and Corr. Servs.*, No. GLR-14-2002, 2016 WL 6822470 (D. Md. Nov. 18, 2016). In those cases, which share the same general set of facts as this case, the district court found unavailability due to opacity and excused the need for exhaustion even though, in each, the inmate-plaintiff proceeded through the administrative process and reached the IGO unhindered by any confusion caused by the structure of the administrative regime. *But see Mitchell v. Williams*, No. WMN-14-1781, 2016 WL 3753726 (D. Md. July 7, 2016) (applying *Ross*, holding inmate's claim regarding use of force investigated by IIU barred by PLRA because not properly exhausted before the IGO).

Supreme Court's admonition that "'[e]xhaustion is no longer left to the discretion of the district court.'" *Ross*, 136 S. Ct. 1858 (quoting *Woodford*, 548 U.S. at 85). Moreover, it incongruously resulted in a finding that Mr. Younger's administrative remedies were unavailable as a matter of law even though he himself undisputedly presented a grievance before the IGO, where administrative remedies clearly *were* available.  (J.A. 343-73, 375-91, 340-70.)  The district court's decision, therefore, must be reversed.

## CONCLUSION

The district court's February 4, 2020 entry of judgment, based on its earlier determination on summary judgment that Mr. Younger had exhausted his administrative remedies, should be reversed.

Respectfully submitted,

BRIAN E. FROSH
Attorney General of Maryland

KARL A. POTHIER
SHELLY E. MINTZ
Assistant Attorneys General
217 E. Redwood Street
Baltimore, Maryland  21202
(410) 230-3135
karl.pothier@maryland.gov
shelly.mintz@maryland.gov

Attorneys for Appellant

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

1.      This brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) because this brief contains 4,046 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in fourteen point, Times New Roman.

# PERTINENT STATUTES AND REGULATIONS

**United State Code**

### 42 U.S.C. § 1997e.  Suits by prisoners

(a) Applicability of administrative remedies

No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

**Annotated Code of Maryland, Correctional Services Article (LexisNexis 2017)**

### § 10-202.  Established

There is an Inmate Grievance Office in the Department.

### § 10-207.  Preliminary Rerview

(a) Required. – The Executive Director or the Director's designee shall conduct a preliminary review of each complaint submitted to the Office.

(b) Dismissal. –

   (1) After preliminary review, if the complaint is determined to be wholly lacking in merit on its face, the Executive Director or the Director's designee may dismiss the complaint without a hearing or specific findings of fact.

   (2)  (i) The order of dismissal shall be forwarded to the complainant within 60 days after the complaint was submitted to the Office.

      (ii) The order of dismissal constitutes the final decision of the Secretary for purposes of judicial review.

(c) Referral to Office of Adminstrative Hearings. –

   (1) After preliminary review, if the complaint is not found to be wholly lacking in merit on its face, the Office shall refer the complaint to the Office of Administrative Hearings.

   (2) The Office of Administrative Hearings shall hold a hearing on the complaint as promptly as practicable.

20

### § 10-209.  Disposition; review by Secretary

(a) Order. –

(1) Promptly after the hearing on a complaint, the Office of Administrative Hearings shall issue a decision in the form of an order.

(2) The order shall include a statement of the findings of fact, the conclusions of law, and the disposition of the complaint under subsection (b) of this section.

(b) Types of Disposition. –

(1)  (i) If the Office of Administrative Hearings dismisses the complaint as wholly lacking in merit, it promptly shall forward an order of dismissal to the complainant.

(ii) The order of dismissal constitutes the final decision of the Secretary for purposes of judicial review.

(2) If the Office of Administrative Hearings concludes that the complaint is wholly or partly meritorious, it promptly shall forward a proposed order to the Secretary.

(c) Review by Secretary. –

(1) Within 15 days after receiving a proposed order under subsection (b)(2) of this section, the Secretary shall issue an order affirming, reversing, or modifying the order of the Office of Administrative Hearings, or remanding the complaint to the Office of Administrative Hearings for further proceedings.

(2) The Secretary may take any action the Secretary considers appropriate in light of the findings of the Office of Administrative Hearings, including ordering the appropriate official to accept as a whole or in part the recommendation of the Office of Administrative Hearings.

(3) (i) The Secretary's order shall be forwarded promptly to the complainant.

(ii) Unless the complaint is remanded, the Secretary's order constitutes the final decision for purposes of judicial review.

### § 10-210.  Judicial Review

(a) Exhaustion of Remedies. –

A court may not consider an individual's grievance that is within the jurisdiction of the Office or the Office of Administrative Hearings unless the individual has exhausted the remedies provided in this subtitle.

(b) Circuit court review. –

(1) The complainant is entitled to judicial review of the final decision of the Secretary under § 10-207(b)(2)(ii) or § 10-209(b)(1)(ii) or (c)(3)(ii) of this subtitle.

(2) Proceedings for review shall be instituted in the circuit court of the county in which the complainant is confined.

(3) Review by the court shall be limited to:

(i) a review of the record of the proceedings before the Office and the Office of Administrative Hearings and any order issued by the Secretary following those proceedings; and

(ii) a determination of whether the complainant's rights under federal or State law were violated.

(c) Appellate review. –

(1) The Administrative Procedure Act does not apply to appellate review of a final judgment of the circuit court under this section.

(2) A party aggrieved by the decision of the circuit court may file an application for leave to appeal to the Court of Special Appeals in accordance with the Maryland Rules.

### § 10-701.  Intelligence and Investigation Unit

(a) Established. –

(1) There is an Intelligence and Investigative Division in the Department.

(2) The Secretary shall appoint the Director of the Intelligence and Investigative Division.

(3) Subject to the authority of the Secretary, the Intelligence and Investigative Division shall:

(i) investigate:

1. alleged criminal violations committed by employees of the Department while on duty;

22

        2. alleged criminal violations committed by inmates, visitors, and other individuals that affect the safety or security of the Department's facilities or programs; and

        3. alleged professional misconduct by employees of the Department;

    (ii) adopt regulations for the conduct of its investigations; and

    (iii) oversee and coordinate all intelligence efforts within the Department.

\*    \*    \*

## Code of Maryland Regulations ("COMAR")

### COMAR 12.07.01.01

\*    \*    \*

B. Terms Defined.

\*    \*    \*

    (8) "Grievance" means the complaint of any individual in the custody of the Commissioner or confined to the Patuxent Institution against any officials or employees of the Division or the Patuxent Institution arising from the circumstances of custody or confinement.

### COMAR 21.07.01.06

A. The Executive Director shall conduct a preliminary review of a grievance and determine if the grievance should:

    (1) Be dismissed; or

    (2) Proceed to a hearing.

B. The Executive Director shall dismiss a grievance on preliminary review as wholly lacking in merit if:

    (1) The grievant is not in the custody of the Commissioner or the Director of the Patuxent Institution at the time the grievance is received by the Office;

    (2) The grievance is not brought against any official or employee of the Division or the Patuxent Institution;

    (3) The grievance is not filed within the time constraints and does not meet the exceptions under Regulation .05 of this chapter;

(4) The grievant did not properly exhaust remedies available under the administrative remedy procedure or the disciplinary proceeding;

(5) The grievant does not establish a claim for which the Office can grant relief; or

(6) The grievance is moot.

## COMAR 12.07.01.07

A. General.

(1) If after conducting a preliminary review, the Executive Director decides the grievance should proceed to a hearing, the Executive Director, or a designee, shall notify the grievant and all other individuals determined necessary for the hearing of the date, time, and location of the hearing.

(2) To the extent that security considerations permit, a hearing conducted under this chapter shall be open to the public.

(3) An administrative law judge of the State Office of Administrative Hearings shall preside over the hearing.

## COMAR 12.11.01.03

A. The Director, or a designee, shall investigate:

(1) An alleged violation of criminal law committed by an employee while on duty;

(2) An alleged violation of criminal law committed by an employee while off duty if that violation impacts, or has the potential to impact, negatively on the Department;

(3) An alleged violation of criminal law committed by an inmate, a visitor, a nonagency employee, or another individual that may affect the safety or security of a Department facility;

(4) An alleged violation of Maryland Public Ethics Law, State Government Article, Title 15, Annotated Code of Maryland, by an employee or nonagency employee; and

(5) Other alleged violations that have a negative impact on the Department.

B. The Director, or a designee, shall perform other duties and investigative responsibilities assigned by the Secretary.

**COMAR 12.11.01.11**

A. The Director, with the approval of the Secretary, shall determine the format and content of a report of investigation.

B. The IIU is the repository for all reports of investigations conducted by an IIU investigator or assigned through the IIU to an agency head for investigation.

C. The Director shall coordinate release of an investigative report with the Secretary consistent with all laws, rules, regulations, policy, and procedures.

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT**

| | | |
|---|---|---|
| KEVIN YOUNGER, | * | |
| Plaintiff-Appellee, | * | |
| v. | * | No. 21-6423 |
| NEIL DUPREE, | * | |
| Defendant-Appellant. | * | |

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

**CERTIFICATE OF SERVICE**

I certify that on this 25th day of August, 2021, the Brief of Appellant and Joint Appendix was filed electronically and served on counsel of record for the appellee, David Daneman, Esquire, and Allen E. Honick, Esquire.


/s/ Karl A. Pothier

_____

Karl A. Pothier