RECORD NO. 21-6423

In The

# United States Court of Appeals
## For The Fourth Circuit

**KEVIN YOUNGER,**

*Plaintiff – Appellee,*

v.

**NEIL DUPREE**

*Defendant – Appellant,*

and

**JEMIAH L. GREEN; RICHARD N. HANNA; KWASI H. RAMSEY; WALLACE SINGLETARY; TYRONE CROWDER,**

*Defendants.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
AT BALTIMORE

————————————

BRIEF OF APPELLEE

————————————

pre

David Daneman
Allen E. Honick
WHITEFORD, TAYLOR & PRESTON, LLP
7 St. Paul Street, Suite 1500
Baltimore, Maryland 21202
(410) 347-8729 – Daneman Direct
(410) 659-6420 – Honick Direct

*Counsel for Appellee*

## UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

### DISCLOSURE STATEMENT

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. <u>21-6423</u>     Caption: <u>Kevin Younger v. Neil Dupree</u>

Pursuant to FRAP 26.1 and Local Rule 26.1,

<u>Kevin Younger</u>
(name of party/amicus)

who is <u>      Appellee      </u>, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1. Is party/amicus a publicly held corporation or other publicly held entity? ☐ YES ☑ NO

2. Does party/amicus have any parent corporations? ☐ YES ☑ NO
   If yes, identify all parent corporations, including all generations of parent corporations:

3. Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity? ☐ YES ☑ NO
   If yes, identify all such owners:

4. Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation? ☐YES ☑NO
   If yes, identify entity and nature of interest:

5. Is party a trade association? (amici curiae do not complete this question) ☐YES ☑NO
   If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6. Does this case arise out of a bankruptcy proceeding? ☐YES ☑NO
   If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7. Is this a criminal case in which there was an organizational victim? ☐YES ☑NO
   If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: _____        Date: 3/23/21

Counsel for: Kevin Younger, Appellee

- 2 -

Print to PDF for Filing

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................. iii

JURISDICTIONAL STATEMENT ...................................................... 1

ISSUE PRESENTED ............................................................................ 1

STATEMENT OF THE CASE ............................................................. 2

    A.    Legal Background ................................................................. 3

    B.    Factual Background .............................................................. 5

          IIU Investigations ................................................................ 7

          Younger's ARP .................................................................... 7

          Raymon Lee's ARP .............................................................. 9

          Proceedings Below ............................................................... 10

          Dupree's Summary Judgement Denied ................................. 11

          Jury Trial ............................................................................. 12

STANDARD OF REVIEW .................................................................. 12

SUMMARY OF ARGUMENT ............................................................ 13

ARGUMENT ....................................................................................... 16

    I.    Dupree's Failure to Exhaust Defense is Not Properly Before This Court ................................................................................ 16

    II.    Even if Dupree's Exhaustion Defense Is Preserved, Mr. Younger Exhausted His Administrative Remedies According to Dupree's New Argument on Appeal ................................................... 18

III.    Even if Dupree's Exhaustion Defense is Preserved, Administrative Remedies Are Unavailable When IIU Investigates the Underlying Claim ........................................................19

    a.    What it Means to be "Available" ...............................................19

    b.    Remedies Are Always Unavailable if IIU Investigates ............21

    c.    Dupree's Sole Case is Inapposite ...............................................26

    d.    An "Available" Remedy Cannot Turn on a Prisoner, or IGO's, Refusal to Follow the Law That Mandates Dismissal When IIU Investigates .............................................30

IV.    The IGO Was Not "Available" to Mr. Younger ................................36

V.    This Court Can Affirm the Judgment Below on Another Ground—the IGO Was Required it to Dismiss Mr. Younger's Complaint Because Mr. Younger Was No Longer in the Department's Custody When IGO Received the Complaint .............40

VI.    Oral Argument is Not Necessary Because the Appeal is Frivolous and the Dispositive Issue Has Been Authoritatively Decided ........................................................................41

CONCLUSION ..................................................................................42

ADDENDUM

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF FILING AND SERVICE

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*ABT Building Products Corp. v. National Union Fire Ins. Co. of Pittsburgh*,
    472 F.3d 99 (4th Cir. 2006) ........................................................................13

*Bacon v. Merchant*,
    No. 8:07-cv-02033-AW (D. Md. Feb. 27, 2008) .........................................21

*Bast v. Cohen, Dunn & Sinclair, PC*,
    59 F.3d 492 (4th Cir. 1995) ........................................................................42

*Battle v. Bishop*,
    No. GJH-19-2266, 2021 WL 1174693
    (D. Md. March 29, 2021)..............................................................................23

*Boggs v. United States*,
    829 Fed. Appx. 610 (4th Cir. 2020) ............................................................41

*Bogues v. McAlpine*,
    2011 WL 5974634 (D. Md. 2011)................................................................22

*Brightwell v. Hershberger*,
    No. DKC-11-3278, 2016 WL 5815882,
    (D. Md. Oct. 5, 2016) ..........................................................................*passim*

*Bunn v. Oldendorff Carriers GmbH & Co., KG*,
    723 F.3d 454 (4th Cir. 2013) ......................................................................13

*Calhoun-El v. Bishop*,
    2014 WL 6713112 (D. Md. 2014)................................................................22

*Carmichael v. Buss*,
    No TDC-14-3037, 2017 WL 2537225 (D. Md. June 9, 2017).....................24

*Chase v. U.S. Dist. Court of Maryland*,
    2015 WL 1817240 (D. Md. 2015)................................................................22

*Chesapeake Paper Products Co. v. Stone & Webster Engineering Corp.*,
    51 F.3d 1229 (4th Cir. 1995) .........................................................................16

*Chew v. Green*,
    2014 WL 4384259 (D. Md. 2014)..............................................................22

*Davis v. Rouse*,
    2010 WL 2025554 (D. Md. 2010)..............................................................22

*Gladhill v. Shearin*,
    No. 1:08-cv-03331-CCB (D. Md. Aug. 19, 2010) ......................................21

*Green v. Sacchet*,
    No. 1:02-cv-01835-WMN (D. Md. Aug. 30, 2002).....................................21

*Grimes v. Warden*,
    2012 WL 2575373 (D. Md. 2012)..............................................................22

*Hinton v. Chronister*,
    No. GJH-19-3334 (D. Md. May 31, 2021)............................................35, 38

*Horner v. Corcoran*,
    2015 WL 1736667 (D. Md. 2015).........................................................22, 38

*Jones v. Bock*,
    549 U.S. 199, 215–16 (2007) .....................................................................13

*Kitchen v. Ickes*,
    116 F.Supp.3d 613 (2015) ..........................................................................22

*Manzur v. Daney*,
    2015 WL 1962182 (D. Md. 2015)....................................................22, 27, 29

*Miller v. Fisher*,
    2015 WL 1402323 (D. Md. 2015)..............................................................22

*Mitchell v. Williams*,
    No. WMN-14-1781, 2016 WL 3753726 (D. Md. July 7, 2016) .............25, 26

iv

*Moore v. Bennette*,
        517 F.3d 717 (4th Cir. 2008) ..........................................................19

*Oakes v. Dep't of Public Safety*,
        2016 WL 6822470 (D. Md. Nov. 18, 2016).............................................24, 29

*Oliver v. Harbough*,
        2011 WL 6412044 (D. Md. 2011) ..................................................22

*People for the Ethical Treatment of Animals, Inc. v.*
*Tri-State Zoological Park of Western Maryland, Inc.*,
        843 Fed. Appx. 493 (4th Cir. 2021) ................................................ 13, 16-17

*Pevia v. Shearin*,
        2015 WL 629001 (D. Md. 2015).....................................................22

*Ross v. Blake*,
        136 S. Ct. 1850 (2016)...........................................................*passim*

*Ryidu-X v. Stouffer*,
        2014 WL 4259131 (D. Md. 2014)..................................................22

*Shiheed v. Fann*,
        2014 WL 883958 (D. Md. 2014)...................................................22

*Shiheed v. Shaffer*,
        2015 WL 4984505 (D. Md. 2015)..................................................22

*Sloan v. Lee*,
        2015 WL 273219 (D. Md. 2015)...................................................22

*Stokes v. Davis*,
        No. JKB-16-3239, 2018 WL 656445 (D. Md. Feb. 1, 2018).......................24

*Toran v. Leply*,
        No. DKC-16-3731 (D. Md. June 20, 2017)...................................24

*Thomas v. Bell*,
        2010 WL 2779308 (D. Md. 2010)..................................................22

*Thomas v. Middleton*,
    2010 WL 4781360 (D. Md. 2010) ..................................................22

*Varghese v. Honeywell Int'l, Inc.*,
    424 F.3d 411 (4th Cir. 2005) .............................................13, 17

*Veney v. Brooks*,
    No. PX-20-410, 2021 WL 4169644 (D. Md. Sep. 14, 2021).......................25

*Wagner v. Galley*,
    No. 8:06-cv-01130-AW (D. Md. Dec. 1, 2006) ...........................................21

*Wilkerson v. Funner*,
    No. 8:06-cv-00575-DKC (D. Md. July 14, 2006) ..................................21, 37

## CONSTITUTIONAL PROVISION

U.S. CONST. amend. VIII .............................................................1, 2, 12, 14

## STATUTES

28 U.S.C. § 1291 ............................................................................1

42 U.S.C. § 1997e(a)........................................................................3, 19

MD. CODE ANN., CORR. SERVS. § 10-202 ................................................36

MD. CODE REGS. §§ 12.02.28, *et seq* ....................................................5

MD. CODE REGS. § 12.02.28.11(B)(2)(d)................................................5, 25

MD. CODE REGS. § 12.07.01.02(D)......................................................3, 37

MD. CODE REGS. § 12.07.01.05(F)..........................................................3

MD. CODE REGS. § 12.07.01.06(B)(1) ...................................................4, 40

MD. CODE REGS. § 12.07.01.06(B)(4) ......................................................3

MD. CODE REGS. § 12.07.01.06(D)......................................................4, 18, 39

MD. CODE REGS. § 12.07.01.08 ........................................................9

MD. CODE REGS. § 12.07.01.08(C) ...........................................30, 33

MD. CODE REGS. § 12.07.01.08(C)(1) .............................................4

MD. CODE REGS. § 12.11.01.08 ......................................................36

MD. CODE REGS. § 12.11.01.08(B) ................................................31

**RULES**

4th Cir. L.R. 34(a)(2) .......................................................................42

Fed. R. App. P. 38 ............................................................................42

Fed. R. Civ. P. 50 .............................................................................17

Fed. R. Civ. P. 59 .............................................................................17

## JURISDICTIONAL STATEMENT

The only jurisdictional basis that Appellant Neil Dupree ("Dupree") provides for this Court's review is 28 U.S.C. § 1291, which provides, "The court of appeals . . . shall have jurisdiction of appeals from all final decisions of the district courts of the United States . . . except where a direct review may be had in the Supreme Court."

Appellee Kevin Younger ("Mr. Younger") agrees that this Court has jurisdiction over the final judgment entered after a jury verdict finding that Dupree and his four co-defendants violated Mr. Younger's Eighth Amendment rights. However, this Court does not have jurisdiction over the pretrial denial of Dupree's motion for summary judgment, which is the sole basis for Dupree's appeal, because that denial did not conclusively adjudicate all claims of all parties to the action. *See infra* Arg. Sec. I. at 12-13. Mr. Younger does not dispute Dupree's designation of the district court's jurisdictional bases.

## ISSUE PRESENTED

A prisoner must exhaust all available administrative remedies before filing suit in federal court. Maryland courts have unanimously held that no administrative remedies are available to a prisoner once the Maryland Department of Public Safety and Correctional Services' ("DPSCS" or the "Department") Internal Investigative Unit ("IIU") initiates an investigation into the underlying incident. Were

1

administrative remedies available to Mr. Younger when IIU commenced three separate investigations immediately following the subject attack?

## STATEMENT OF THE CASE

Three prison guards, acting on direct orders from Dupree, beat Mr. Younger within an inch of his life as he slept in his cell. This is not conjecture: the officers were criminally convicted; the warden was forced to resign, and a jury has already returned a $700,000 verdict against Dupree and his four codefendants for violating Mr. Younger's Eighth Amendment rights. This is, in other words, precisely the kind of meritorious prisoner lawsuit that Congress *intended* to permit in federal court.

As explained herein, Dupree's exhaustion defense is not preserved for appeal. *See infra* Arg. Sec. I. Even if it was preserved, remedies were not available to Mr. Younger because the IIU investigations divested the administrative remedy procedure of its authority to consider any grievance on its merits. *See infra* Arg. Sec III(b). Moreover, even if IIU did not render administrative remedies unavailable, Dupree admits on page 4 of his brief that Mr. Younger "filed a grievance with the Department's Inmate Grievance Office ("IGO")," which IGO "dismissed." This admission undermines the very basis for Dupree's appeal; namely, that in order to properly exhaust his remedies, Mr. Younger was "required to file [his] claim with the IGO" (Appellant Br. at 15).

2

## A.    Legal Background

The Prison Litigation Reform Act ("PLRA") requires a prisoner to "exhaust[]" "such administrative remedies as are available" before filing a lawsuit. 42 U.S.C. § 1997e(a).  In Maryland, the Administrative Remedy Procedure ("ARP") is the typical method for pursuing prison remedies.  The ARP has three steps: an initial grievance with the warden within 30 days of the incident; an appeal of the warden's decision to the Commissioner of Corrections within 30 days of the warden's response; and an appeal of the Commissioner's decision to the IGO within 30 days of the Commissioner's response.  The ARP applies to virtually all conditions of confinement claims, including excessive force by correctional officers.

The IGO cannot consider, and must therefore dismiss, any claim for which a prisoner must first file an ARP grievance.[1]  MD. CODE REGS. § 12.07.01.06(B)(4).  The IGO can only review an ARP appeal if the prisoner "properly exhaust[s]" the first two stages of the ARP.  *Id.* § 12.07.01.02(D).  However, IGO can waive the ARP exhaustion requirement for "good cause."  *Id.* § 12.07.01.05(F).  The IGO is thus relegated to a review-only role for the vast majority of prison complaints because the ARP process covers virtually every claim relating to conditions of confinement, including excessive use of force by staff (JA 253).

---

[1] Only two categories of prison claims do not fall within the ARP process; 1) case management decisions; and 2) Maryland Parole Commission decisions (JA 253).

3

Maryland regulations require the IGO to dismiss an ARP appeal "as wholly lacking in merit if," *inter alia*, "[t]he grievant is not in the custody of the Commissioner or the Director of the Patuxent Institution at the time the grievance is received by the Office." *Id.* § 12.07.01.06(B)(1). An IGO order of dismissal constitutes a final decision for purposes of judicial review. *Id.* § 12.07.01.06(D). If the IGO grants a hearing on an ARP appeal, the IGO reviews the administrative decision, including a procedural dismissal, to determine if that decision is "[a]rbitrary and capricious; or [i]nconsistent with the law." *Id.* § 12.07.01.08(C)(1).

Separately, Maryland maintains an Internal Investigative Unit ("IIU")[2] that investigates allegations of misconduct by prison staff. IIU has mandatory jurisdiction over claims that a prison guard used "excessive force" (JA 529). Maryland law provides that "[a]n agency head or a designee shall . . . [r]elinquish authority for an investigation undertaken by the IIU, including an investigation initially assigned to an agency head, or a designee, that is subsequently assumed by the IIU" (JA 529).

Since 2008, Maryland regulations require a warden to dismiss an ARP "for procedural reasons" if it shares the "same basis" as an IIU investigation. (JA 308

---

[2] In 2014, Maryland renamed the IIU as the Internal Investigative Division, or IID. Thus, the terms "IIU" and "IID" are interchangeable.

DCD 185-003.VI.N.7).[3]  In such an instance, the dismissal must read, "Your request is dismissed for procedural reasons final. This issue is being investigated by IIU, case number: _____. Since this case shall be investigated by IIU, no further action shall be taken within the ARP process" (JA 308).[4]  It is undisputed that at the time of the subject attack, an ARP request would be dismissed as procedurally improper if it overlapped with an IIU investigation.  *See* Appellant Br. at 15 ("district court correctly determined that an IIU investigation 'closes the door to the ARP'"); JA 308.

### B.      Factual Background

On September 29, 2013, at the Maryland Reception, Diagnostic and Classification Center ("MRDCC"), a prisoner, Raymon Lee, assaulted correctional officer Alade Ganiyu (the "Ganiyu Incident") (JA 556).  Mr. Younger was standing nearby at the time and intervened in an effort to help Ganiyu (JA 505).  Despite risking his own safety to help the officer, Ganiyu identified Younger as an assailant and Younger was administratively charged accordingly (JA 556).  Later that night,

---

[3] "DCD" stands for Division of Correction Directive, or internal prison directives, which governed the ARP process at all relevant times.  In 2018, the Department adopted regulations that subsumed the administrative remedy procedure DCDs.  *See* MD. CODE REGS. §§ 12.02.28, *et seq.*

[4] In 2018, Maryland amended the ARP regulations and added mandatory language to the warden's procedural dismissal response because of an IIU investigation; namely, that "no further action will be taken under the Administrative Remedy Procedures <u>at this level. You may appeal this decision to the Commissioner of Correction</u>."  MD. CODE REGS. § 12.02.28.11(B)(2)(d) (emphasis supplied).

Younger was moved to a segregated cell to await his disciplinary hearing (JA 48, 456).

On the morning of September 30, 2013, just after the 7 a.m. roll call, three correctional officers beat Mr. Younger as he slept in his cell (JA 49, 556). The officers also attacked at least six other prisoners in retaliation for their perceived involvement in the Ganiyu Incident (JA 48–49, 556). Dupree, the MRDCC intelligence lieutenant, ordered these retaliatory attacks telling the correctional officer assailants that he wanted "blood for blood," ECF 290 (Trial Tr. 142:5–144:21, Jan. 21, 2020).

Dupree gave a list to the assailants with the names and cell locations of each target prisoner, ECF 290 (Trial Tr. 151:1–15, Jan. 21, 2020). With the list in hand, the assailants traversed the seven floors inside of MRDCC—a maximum security prison—moved freely from one cell block to the next, accessed each cell with help from complicit tier officers, and beat seven prisoners without ever leaving a trace (JA 507).

The assailants entered Mr. Younger's cell brandishing a mace can, radios, and handcuffs used as brass knuckles, and attacked him as he slept (JA 582). The assailants punched and kicked Mr. Younger and slammed his head against the concrete floor and the metal toilet in his cell (JA 104, 582). The attack lasted several minutes, after which the assailants left Mr. Younger on the floor of his cell,

unconscious, and in a pool of blood (JA 582). Mr. Younger sustained serious injuries to his head, left hand, and right knee (JA 582). He subsequently spent time in a Kentucky hospital for his head injury and he required surgery on his right knee (JA 594).

### IIU Investigations

Thirty-six hours elapsed between the beating and when MRDCC officials finally notified IIU, ECF 291 (Trial Tr. 100:7–19, 105:17–21, Jan. 22, 2020). On October 1, 2013, IIU opened three separate investigations into the attack; one administrative investigation as to the warden, and a criminal and administrative investigation as to the assailants (JA 204–05). The latter two investigations lasted nearly one year (JA 548). IIU repeatedly interviewed Mr. Younger in the months after the attack and learned during its investigations that Mr. Younger tried to help the officer during the Ganiyu Incident (JA 505).[5] IIU issued reports at the end of each investigation and concluded that the officer assailants "did assault the prisoners, including Younger, who they believed were involved in the fight on the previous evening with the correctional officer" (JA 454).

### Younger's ARP

In the days after the attack, Mr. Younger filed an ARP at MRDCC (JA 394-95). However, on October 24, 2013, Mr. Younger was transferred to the Roxbury

---

[5] IIU interviewed more than 50 individuals in connection with the subject attack.

Correctional Institution ("RCI") in Hagerstown to serve a disciplinary sentence of one-year solitary confinement for his alleged involvement in the Ganiyu Incident (JA 155). Before his transfer, MRDCC personnel confiscated Mr. Younger's personal property, including copies of his ARP paperwork (JA 564).

At RCI, Mr. Younger "kept filing" ARPs concerning the attack, but "never heard anything back" (JA 395 at 157:21–158:3, 160:3–20, 564). Receiving no response, Mr. Younger sent a grievance to the IGO detailing the facts of the attack and identifying the officer assailants, which IGO received on March 28, 2014 (JA 343–47). Mr. Younger was transferred to federal custody on March 26, 2014, (JA 353), where he remained until his release in 2019.

IGO responded to Mr. Younger's grievance by letters dated May 2 and May 15, 2014, and advised Mr. Younger that he must submit proof that he exhausted the ARP process before IGO would consider his claim (JA 354, 359). Mr. Younger responded by letters dated May 20 and June 25, 2014, and advised that he was in a Kentucky hospital recovering from his injuries, and he enclosed the only ARP copies that were provided to him from December 2013 at RCI (JA 361–65). Mr. Younger further advised IGO that he previously submitted ARPs and a letter to the DPSCS Director, but never heard back (JA 365).

IGO responded by letter dated August 4, 2014, and again requested that Mr. Younger provide proof that he exhausted the ARP process (JA 366). Mr. Younger

responded by letters dated August 22 and August 24, 2014, and reiterated that he was only given a copy of his December 2013 ARP, which he had previously provided to IGO (JA 368–70). IGO responded by letter dated November 25, 2014, explaining that it was dismissing Mr. Younger's claim because he "failed properly to exhaust the ARP process" (JA 373).

### Raymon Lee's ARP

On October 10, 2013, Raymon Lee, the self-admitted lone assailant in the Ganiyu Incident, and a victim in the retaliatory attack, submitted an ARP concerning the subject assault (JA 377). DPSCS dismissed that ARP on October 16, 2013, stating, "This issue is being investigated by IIU, case number _____. [sic] Since this case shall be investigated by IIU, no further action shall be taken within the ARP process" (JA 377). Mr. Lee appealed the dismissal directly to IGO on November 4, 2013, and enclosed his initial ARP paperwork and a detailed narrative of the subject attack (JA 375–78).

IGO accepted Lee's appeal and granted him an administrative hearing on June 12, 2014 (JA 380). That hearing ultimately occurred on October 6, 2014, after two postponements (JA 380). An administrative law judge ("ALJ") issued a written decision finding in Lee's favor on January 28, 2015, and awarded Lee $5,000 (JA 380–88, 391). Notably, the written decision states that the ALJ conducted the hearing pursuant to MD. CODE REGS. § 12.07.01.08 (JA 380), which establishes the

standard of review for procedural dismissals as "[a]rbitrary and capricious; or [i]nconsistent with law." Thus, by finding in Lee's favor, the IGO/ALJ determined that the warden's procedural dismissal because of IIU's involvement was either arbitrary and capricious, or inconsistent with law. This, notwithstanding the unambiguous mandate that a warden "shall issue a final dismissal for procedural reasons" if an ARP that shares the "same basis" as an IIU investigation (JA 308).

Both Mr. Lee and Mr. Younger corresponded with IGO Executive Director, Scott Oakley (JA 366–67, 375). Both Mr. Lee and Mr. Younger provided specific facts about the attack, the assailants, IIU's involvement, and their efforts to file ARPs about the attack (JA 343–47, 363, 375–76). Mr. Younger specifically told IGO that he met with internal investigators three separate times about the attack (JA 369). Yet, Mr. Oakley and IGO granted a hearing to Mr. Lee, while simultaneously dismissing Mr. Younger's grievance for his alleged failure to exhaust (JA 372–73).

### *Proceedings Below*

On September 28, 2016, Mr. Younger filed his initial complaint against Dupree, the three assailants, the former MRDCC warden, two other supervisors, and the State of Maryland, ECF 1, (JA 7, 44–72). The case was assigned to Judge Richard D. Bennett. Dupree moved to dismiss or for summary judgment on April 13, 2017, ECF 60. Judge Bennett denied the motion, which he only considered as one to dismiss, by Memorandum Opinion dated August 22, 2017, ECF 72. Mr.

Younger filed an amended complaint on July 15, 2019, ECF 135-1. Dupree again moved to dismiss on August 30, 2017, ECF 156. Judge Bennett denied the motion by Memorandum Opinion dated November 19, 2019, ECF 188.

### *Dupree's Summary Judgment Denied*

Dupree again moved for summary judgment on November 18, 2019, ECF 186, arguing for the first time in more than three years of litigation that Mr. Younger failed to exhaust administrative remedies as required by the PLRA.[6] Specifically, Dupree argued that Mr. Younger's initial ARP "was untimely," ECF 186-1 at 9 n.10. Dupree attached to his summary judgment motion over 100 pages of new, unproduced documents (despite discovery requests for same), and the declaration of a previously undisclosed witness, Executive Director of the IGO, F. Todd Taylor, Jr., who averred that IGO received one grievance from Mr. Younger on March 28, 2014, which IGO dismissed on November 25, 2014 (JA 339–41, 564).

Judge Bennett denied the motion in a Memorandum Opinion dated December 19, 2019, ECF 217, noting the oft-repeated holding that Maryland's "administrative remedy procedure is rendered unavailable at the commencement of an investigation by the Internal Investigative Unit . . . Accordingly, an IIU investigation fully satisfies

---

[6] Although Dupree included a boilerplate exhaustion defense in his original and Amended Answers, ECF 123, 134-1, he did not brief the issue in his two motions to dismiss, ECF 60, 156.

the PLRA's exhaustion requirement" (JA 563). Dupree did not move for reconsideration.

### *Jury Trial*

Mr. Younger's claims proceeded to a jury trial on January 21, 2020 (JA 32). At no time during the trial did Dupree elicit testimony or submit evidence to show that the ARP process is available when a simultaneous IIU investigation is underway. Dupree did not move for judgment as a matter of law during or after the trial. After nine days of testimony, the jury found that Dupree, three assailants, and the warden each violated Mr. Younger's Eighth Amendment rights and awarded Mr. Younger $700,000 in damages (JA 579). Following the verdict, Dupree moved for a new trial *nisi* remittitur arguing only that the verdict was excessive, ECF 282. Judge Bennett denied the motion by Memorandum Opinion dated February 17, 2020, ECF 313 (JA 580–97). Dupree noted this appeal on March 18, 2020, seeking to reverse the <u>pretrial denial</u> of his summary judgment motion (JA 39–40).

## STANDARD OF REVIEW

Dupree asserts that the district court entered final judgment "based on its earlier determination on summary judgment that Mr. Younger had exhausted his administrative remedies" (Appellant Br. at 18). However, exhaustion under the PLRA is simply a procedural condition precedent to filing suit, not to the entry of a final judgment. Exhaustion is not an element of a plaintiff's claim, but is instead

"an affirmative defense to be pleaded and proven by defendants." *Jones v. Bock*, 549 U.S. 199, 215–16 (2007).

It is "well-settled" that this Court "will not review, under any standard, the pretrial denial of a motion for summary judgment after a full trial and final judgment on the merits." *Bunn v. Oldendorff Carriers GmbH & Co.*, KG, 723 F.3d 454, 460 n.3 (4th Cir. 2013) (quoting *Varghese v. Honeywell Int'l, Inc.*, 424 F.3d 411, 421 (4th Cir. 2005)). As recently as January 2021, this Court found "no reason to deviate" from that well-settled rule and refused to consider "challenges directed at the district court's denial of [a] motion for summary judgment" where the appellant failed to move for judgment as a matter of law. *People for the Ethical Treatment of Animals, Inc. v. Tri-State Zoological Park of Western Maryland, Inc.*, 843 Fed. Appx. 493, 494 (4th Cir. 2021) (quotation and citation omitted).

Should the Court find that Dupree's pretrial summary judgment denial is preserved, it reviews "de novo the conclusions of law on which" the district court's denial is based. *ABT Building Products Corp. v. National Union Fire Ins. Co. of Pittsburgh*, 472 F.3d 99, 113 (4th Cir. 2006).

## SUMMARY OF ARGUMENT

Dupree asks this Court to reverse a correctly decided and well-reasoned **pretrial ruling** denying his motion for summary judgment and finding that administrative remedies are "rendered unavailable upon the commencement of an

13

investigation by the Internal Investigative Unit" (JA 551). Dupree never sought reconsideration of, or renewed his exhaustion argument. After a nine-day jury trial, the jury found Dupree and his four co-defendants liable for violating Mr. Younger's Eighth Amendment rights and awarded Mr. Younger $700,000 (JA 579). Dupree moved for a new trial *nisi* remittitur arguing only that the verdict was excessive, ECF 282, which the court denied (JA 580).

Dupree does not appeal the jury's determination that he violated Mr. Younger's constitutional rights. Instead, Dupree hopes to escape responsibility for his role in the attack by presenting a new exhaustion argument on appeal. Even if, *arguendo*, Dupree properly preserved his exhaustion defense, well-settled Maryland law precludes the relief he now seeks—an IIU investigation "closes the door" to the ARP process (JA 563).

Indeed, Maryland law is so well-settled on this point that every judge in this district to consider this issue since 2010 has concluded, as Judge Bennett did below, that an IIU investigation renders claims either exhausted or unavailable. Yet, prison officials represented by OAG continue to argue that the ARP regulations do not mean what they say and that prisoners must still submit their grievances to the ARP process even if IIU is involved. However, OAG has yet to persuade any judge in this district of that (incorrect) legal conclusion.

Candidly, it is unclear what Dupree argues that Mr. Younger should have done to properly exhaust his remedies. In his summary judgment motion, Dupree argued that Younger failed to exhaust because his initial ARP was untimely, ECF 186-1 at 9. Dupree has changed his tune on appeal. He now argues that Younger failed to exhaust because he was "required to file the claim with the IGO" (Appellant Br. at 15). Leaving aside that Dupree <u>now admits</u> that "an IIU investigation closes the door to the ARP" (Appellant Br. at 15), it is undisputed that Mr. Younger filed his claim with the IGO (JA 343–47).

Dupree's admission that the ARP process was unavailable to Mr. Younger undermines and makes frivolous his exhaustion argument at summary judgment. So, Dupree is really using this appeal as an opportunity to advance a new argument— one that he did not raise below and one that equally fails as a matter of law for the reasons explained herein. This procedural gamesmanship, both in misinterpreting the ARP regulations, and in arguing contrary legal positions, is precisely the type of "game-playing" that "thwarts the effective invocation of the administrative process." *Ross v. Blake*, 136 S. Ct. 1850, 1862 (2016).

Accordingly, even if this Court considers Dupree's unpreserved appeal, this Court should affirm the denial of summary judgment.

15

## ARGUMENT

### I.    Dupree's Failure to Exhaust Defense is Not Properly Before This Court

Dupree's argument on page 2 of his brief that he seeks review of the summary judgment denial based solely on a "purely legal issue" rather than an erroneous factual determination, has been squarely rejected by this Court:

> We reject the contention that our review should depend on whether the party claims an error of law or an error of fact. Such a dichotomy is problematic because all summary judgment decisions are legal decisions in that they do not rest on disputed facts . . . .

*Chesapeake Paper Products Co. v. Stone & Webster Engineering Corp.*, 51 F.3d 1229, 1237 (4th Cir. 1995) (citation omitted); *see also Id.* (declining to engage in the "dubious undertaking of determining the bases on which summary judgment is denied and whether those bases are 'legal' or 'factual'"). Further, regarding administrative exhaustion in particular, Judge Chasanow recently noted, "The practical availability of remedies is not a pure question of law." *Brightwell v. Hershberger*, No. DKC-11-3278, 2016 WL 5815882, at *2 (D. Md. Oct. 5, 2016).

For these reasons, it is "well-settled" that this Court "will not review, under any standard, the pretrial denial of a motion for summary judgment after a full trial and final judgment on the merits.'" *Tri-State Zoological Park*, 843 Fed. Appx. at

16

494 (citation omitted).[7] Dupree moved for summary judgment on multiple grounds including failure to exhaust, ECF 186, which the court denied *in toto* (JA 552).[8] Dupree did not ask the court to reconsider its summary judgment denial. Dupree never moved for judgment as a matter of law ("JMOL") under Rule 50. After the jury verdict in Mr. Younger's favor, Dupree moved for a new trial *nisi* remittitur under Rule 59, arguing only that the verdict was excessive, ECF 282 (JA 581).

Dupree had the option to present evidence at trial showing that administrative remedies were actually available to Mr. Younger and renew his exhaustion defense in a JMOL motion. Dupree did not do so. Thus, Dupree's exhaustion defense is not preserved for appeal because he failed to move for JMOL, and because the availability of remedies is not a discrete legal issue.[9] This Court should therefore affirm the judgment below.

---

[7] *See also Varghese*, 424 F.3d at 422 (holding that "binding precedent mandates that the appeal be dismissed" where appellant never moved for JMOL under Rule 50 after the denial of its motion for summary judgment).

[8] The court did not grant summary judgment in favor of Mr. Younger.

[9] *See also Ross*, 136 S. Ct. at 1862 (suggesting that the lower court could—or even "should"—find that DCD 185-003 made further administrative remedies unavailable and that "[t]he plaintiff's] suit may proceed even though he did not file an ARP").

## II.    Even if Dupree's Exhaustion Defense Is Preserved, Mr. Younger Exhausted His Administrative Remedies According to Dupree's New Argument on Appeal

Dupree argued below that Mr. Younger <u>failed to exhaust the ARP process</u>, ECF 186-1, at 8 ("Mr. Younger neither demonstrated that he had properly exhausted the ARP process before resorting to the IGO nor provided a basis for waiving the ARP exhaustion requirement."). Dupree abandons that argument on appeal and concedes that his basis for summary judgment was, in fact, frivolous: "the district court correctly determined that an IIU investigation 'closes the door to the ARP'" (Appellant Br. at 15).

Dupree now argues that Mr. Younger was "required to file the claim with the IGO pursuant to the mandated third step of the administrative procedure." *Id.* However, three short pages later in his brief, Dupree admits that Mr. Younger "undisputedly presented a grievance before the IGO." *Id.* at 18; *see also Id.* at 4. Dupree also admits that the IGO "dismissed the grievance on preliminary review." *Id.* at 4. An IGO order of dismissal constitutes a "final" decision for the purposes of judicial review. MD. CODE REGS. § 12.07.01.06(D).

Thus, even according to Dupree, Mr. Younger exhausted his administrative remedies. This Court should therefore affirm the judgment below.

### III. Even if Dupree's Exhaustion Defense is Preserved, Administrative Remedies Are Unavailable When IIU Investigates the Underlying Claim

#### a. What it Means to be "Available"

The PLRA requires a prisoner to exhaust all "available" administrative remedies before filing suit. 42 U.S.C. § 1997e(a). An administrative remedy is "available" within the meaning of the PLRA if it is "capable of use to obtain some relief for the action complained of." *Ross*, 136 S. Ct. at 1859.

An administrative remedy is not "available" if, *inter alia*, it is "so opaque that it becomes, practically speaking, incapable of use." *Id.* at 1859; *see also Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008) ("[A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from available himself of it."). That describes this case.

In the interval between his summary judgment motion below and filing his brief on the merits in this Court, Dupree has revised his theory of what he believes Mr. Younger should have done to exhaust his claim. In his summary judgment motion, Dupree asserted that Mr. Younger failed to exhaust because he did not file an ARP within 30 days of the attack, ECF 186-1 at 9. Now, in his merits brief, Dupree admits that the IIU investigation "close[d] the door to the ARP process," but now asserts that Mr. Younger failed to exhaust because he was "required to file the claim with the IGO" (Appellant Br. at 15).

Even with the benefit of counsel from the Maryland Attorney General's Office ("OAG"), Dupree cannot tell this Court with precision and conviction what it is that Mr. Younger should have done. That is proof positive that the grievance procedures facing Mr. Younger at the time were so objectively unclear as to be "unavailable" within the meaning of the PLRA.

Against this backdrop, the legal rule that Dupree seeks is nothing short of incredible. Despite his own hedging, Dupree contends that, if Mr. Younger picked the wrong administrative remedy procedure during the thirty-day window afforded to him to file an administrative claim, he should be forever barred from federal court. According to Dupree, all that matter is whether a particular remedy *exists*—the opacity of the administrative procedure is, in his view, irrelevant (Appellant Br. at 17).

That is not, and should not become, the law. The PLRA is not a license for prisons to craft convoluted administrative procedures, leaving prisoners to guess at the proper remedies for a particular claim, and to then bar meritorious lawsuits by prisoners who guess wrong. This is why remedies are not "available" when a prison creates rules that are "so confusing" that "rational inmates cannot be expected to use" them. *Ross*, 136 S. Ct. at 1859–60 (quotation omitted).

### b.    Remedies Are Always Unavailable if IIU Investigates

An IIU investigation has always rendered administrative remedies unavailable, even long before Maryland amended its ARP directive in 2008 to mandate dismissal of an ARP where there is a parallel IIU investigation. We have found five cases that were decided prior to the 2008 amendment of DCD 185-003, where an ARP was dismissed as procedurally improper solely because of a parallel IIU investigation. We did not find a single case with a different outcome. Incredibly, in each of these cases, OAG recognized the very point that Mr. Younger stresses here—that IIU's involvement "supercede[s] [sic] and ARP investigation. *See* Mem. at 3–4, ECF 14-1, *Wilkerson v. Funner*, No. 8:06-cv-00575-DKC (D. Md. July 14, 2006); *see also* (Mem. Ex. 5, ECF 13-5, *Bacon v. Merchant*, No. 8:07-cv-02033-AW (D. Md. Feb. 27, 2008)); (Mem. Ex. 8, ECF 33-12, *Gladhill v. Shearin*, No. 1:08-cv-03331-CCB (D. Md. Aug. 19, 2010)); (Mem. Ex. 7, ECF 31-7, *Wagner v. Galley*, No. 8:06-cv-01130-AW (D. Md. Dec. 1, 2006)); (Mem. Ex. 5, ECF 12, *Green v. Sacchet*, No. 1:02-cv-01835-WMN (D. Md. Aug. 30, 2002).

Following the 2008 amendment of DCD 185-003 and continuing through the Supreme Court's 2016 decision in *Ross*, Maryland prisons continued to dismiss an ARP whenever it was parallel to an IIU investigation. We have identified thirty opinions, written by twelve different judges, holding that, when IIU investigates, no other administrative remedy is available. *See, e.g., Kitchen v. Ickes*, 116 F.Supp.3d

613, 625 (2015); *Manzur v. Daney*, 2015 WL 1962182, at *3 (D. Md. 2015); *Chase v. U.S. Dist. Court of Maryland*, 2015 WL 1817240, at *3 (D. Md. 2015); *Miller v. Fisher*, 2015 WL 1402323, at *4 (D. Md. 2015); *Sloan v. Lee*, 2015 WL 273219, at *12 (D. Md. 2015); *Shiheed v. Shaffer*, 2015 WL 4984505, at *3 (D. Md. 2015); *Pevia v. Shearin*, 2015 WL 629001, at *9 (D. Md. 2015); *Horner v. Corcoran*, 2015 WL 1736667, at *8 (D. Md. 2015); *Chew v. Green*, 2014 WL 4384259, at *13 (D. Md. 2014); *Calhoun-El v. Bishop*, 2014 WL 6713112, at *9 (D. Md. 2014); *Ryidu-X v. Stouffer*, 2014 WL 4259131, at *7 (D. Md. 2014); *Shiheed v. Fann*, 2014 WL 883958, at *5 (D. Md. 2014); *Grimes v. Warden*, 2012 WL 2575373, at *4 (D. Md. 2012); *Oliver v. Harbough*, 2011 WL 6412044, at *4 (D. Md. 2011); *Bogues v. McAlpine*, 2011 WL 5974634, at *4 (D. Md. 2011); *Thomas v. Bell*, 2010 WL 2779308, at *4 (D. Md. 2010); *Thomas v. Middleton*, 2010 WL 4781360, at *3 (D. Md. 2010); *Davis v. Rouse*, 2010 WL 2025554, at *3 (D. Md. 2010).

In 2016, the Supreme Court in *Ross* considered, *inter alia*, if administrative remedies were available when IIU investigated the underlying claim. *Ross*, 136 S. Ct. at 1860–62. The plaintiff in *Ross* never filed an ARP after he was attacked by two correctional officers. *Id.* at 1855. He argued that he thought the IIU investigation served as a substitute for the ARP process. *Id.* The Court rejected the notion that a "special circumstances" exception applied to the PLRA's exhaustion mandate. *Id.* at 1858. However, the Court was unable to decide whether remedies

were available because the parties had not submitted DCD 185-003 to either court below.  *Id.* at 1861 n.4.  So, the Court remanded the case for a "thorough review" of ARP materials to determine if, and to what extent, administrative remedies were available upon the commencement of an IIU investigation.[10]  *Id.* at 1862.

The Supreme Court nevertheless instructed the lower courts that the suit "**should**" be allowed to proceed if:  (1) "the IIU investigation into his assault foreclose[d] the possibility of relief through the standard grievance procedures;" (2) the procedures were "unknowable by an ordinary prisoner" or "the system so confusing that no such inmate could make use of it;" or (3) "Maryland officials thwarted the effective invocation of the administrative process through threats, game-playing, or misrepresentations, either on a system-wide basis or in the individual case."  *Id.* at 1862.

Since *Ross*, Maryland district judges have conducted thorough reviews of the ARP process and have routinely concluded that an IIU investigation renders administrative remedies either unavailable or exhausted.  *See, e.g., Battle v. Bishop*, No. GJH-19-2266, 2021 WL 1174693, at *9 (D. Md. March 29, 2021) ([S]ince *Ross*, courts in this District have found an IID investigation renders claims either exhausted or unavailable, the fact that Plaintiff's ARP complaints were dismissed due to an ongoing IID investigation provides an additional ground for denying

---

[10] The case settled before additional fact-finding occurred.

summary judgment on the issue of exhaustion."); *Stokes v. Davis*, No. JKB-16-3239, 2018 WL 656445, at *10 (D. Md. Feb. 1, 2018) ("[S]ome procedures were unavailable to [the plaintiff] due to the Defendants' misrepresentation that an IID investigation into his allegations was underway."); *Toran v. Leply*, No. DKC-16-3731, at *4 (D. Md. June 20, 2017) ("There is no indication in either the regulations or in the response provided to Toran that further efforts to address his ARP claim would resume after the IID investigation was terminated, or that an appeal of his ARP complaint would not simply be dismissed.  In light of these considerations, this court does not find dismissal without prejudice on the basis that Toran did not exhaust his administrative remedies legally sound or well-reasoned."); *Carmichael v. Buss*, No TDC-14-3037, 2017 WL 2537225, at *6 (D. Md. June 9, 2017) ("The Court concludes that under the facts of this case, Carmichael did not have an available administrative remedy because the procedure is so 'opaque' that 'no ordinary prisoner can make sense of' what, if anything, the administrative process requires where an IIU investigation results in the procedural dismissal of an ARP."); *Oakes v. Dep't of Public Safety*, 2016 WL 6822470, at *5 (D. Md. Nov. 18, 2016) ("At bottom, the Court concludes [the plaintiff] exhausted his administrative remedies because an IIU investigation into [the plaintiff's] claims foreclosed the ARP process, rendering his administrative remedies unavailable."); *Brightwell v. Hershberger*, 2016 WL 4537766, at *9 (D. Md. Aug. 31, 2016) ("Because the

existence of an IIU investigation shuts down the ARP process and thus exhausts administrative remedies for complaints that would typically fall within the ARP jurisdiction, Plaintiff met his burden to exhaust upon the initiation of that investigation.").

The handful of cases since *Ross* where the Maryland district court has held that a plaintiff failed to exhaust notwithstanding a parallel IIU investigation fall into two categories; (1) where the prisoner is informed, pursuant to MD. CODE REGS. § 12.02.28.11(B)(2)(d), that he "may appeal" the procedural dismissal "to the Commissioner of Correction," but fails to do so, *see, e.g., Veney v. Brooks*, No. PX-20-410, 2021 WL 4169644, at *2 (D. Md. Sep. 14, 2021); and (2) where the plaintiff fails to respond to a dispositive motion on the issue, *see, e.g., Mitchell v. Williams*, No. WMN-14-1781, 2016 WL 3753726 (D. Md. July 7, 2016). The cases in these categories are outliers and clearly distinguishable from the facts in the instant matter.

These cases are conclusive. Dupree's exhaustion argument contradicts every decision cited above and Dupree does not offer any reason why the outcome in this case should be any different. Therefore, Dupree's assertion before this Court—that a "dismissal due to the IIU's involvement does not affect the inmate's need to pursue the claim and seek relief with the IGO" (Appellant Br. 15)—**is indefensible**.

### c.     Dupree's Sole Case is Inapposite

Dupree presents <u>only one case</u> to support his argument on appeal, *Mitchell, supra*, where the court found that the plaintiff failed to exhaust his administrative remedies where there was a contemporaneous IIU investigation.[11]   *Id.* at *4. However, *Mitchell* is anomalous and inapposite because the plaintiff in that case failed to respond to a motion to dismiss and/or for summary judgment, so the court could not determine if IIU ever investigated the underlying claim.  *Id.* at *1 ("He provides no evidence to support this contention [that IIU was involved] and as noted has failed to respond to Defendants' motion.").  Consequently, the *Mitchell* court had no record evidence to conclude that remedies were not available and dismissed the case.  *Id.* at *4.

Here, unlike in *Mitchell*, it is undisputed that IIU investigated the subject attack.  Here, unlike in *Mitchell*, Mr. Younger participated in every step of the litigation and provided the district court with ample evidence for it to conclude that remedies became unavailable when IIU began its investigations.  *Mitchell* is thus clearly distinguishable from the instant matter.

Notably, on at least three prior occasions, OAG has argued that a prisoner failed to exhaust by neglecting to provide IGO with proof of ARP exhaustion, even

---

[11] Of course, even if Dupree could locate counterexamples, it would only show that the grievance system was so confusing that prison officials did not know how to administer it—or that the system was administered arbitrarily.

where IIU is investigating the underlying matter.  The district court rejected that argument every time.

In *Manzur, supra*, Manzur sued two correctional officers for excessive force resulting in a broken arm.  *Manzur*, 2015 WL 1962182, at *1.  IIU investigated the incident.  *Id.* at *3.  Approximately ninety days after the incident, Manzur filed a grievance directly with IGO, which IGO dismissed when the plaintiff failed to respond to a request for additional documents.  *Id.*  The defendants, through OAG, moved to dismiss the complaint for failure to exhaust.  *Id.* at *2.  The district court rejected OAG's "specious" argument and held that "administrative remedies were unavailable" because once IIU "initiates investigation, the matter no longer is subject to the ARP process."  *Id.* at *3.

In *Brightwell, supra*, Brightwell sued several correctional officers for excessive force.  *Brightwell*, 2016 WL 4537766, at *1.  IIU investigated the incident. *Id.* at *2.  Brightwell filed three grievances; a letter to IIU, a complaint to IGO, and an ARP to the warden.  *Id.*  The IGO dismissed his complaint for failure to exhaust the ARP process, and the warden dismissed his ARP because it was not properly signed.  *Id.*  Brightwell appealed the ARP dismissal to the Commissioner who denied it, and then to the IGO, which granted a hearing.  *Id.*  However, Brightwell refused to participate in the IGO hearing because his witnesses were not available.  *Id.*

27

The defendants, through OAG, sought summary judgment for failure to exhaust arguing that Brightwell waived his "available" IGO remedy by not participating in the hearing. *Id.* at *6. Brightwell argued that the "IIU investigation foreclosed the ARP process, and, therefore, he had no further remedies that were actually available." *Id.* at *7.

There, like here, OAG argued that a prisoner must file a grievance directly with IGO when there is a parallel IIU investigation. *Id.* at *8. The district court rejected that argument because it "contradicted the decisions of several other judges in this district that an IIU investigation fully satisfies the exhaustion requirement." *Id.* (citations omitted). There, like here, OAG argued that "the IIU does not fully cut off the ARP process" because a prisoner can still appeal the mandatory procedural dismissal. *Id.* at *9. The district court rejected that argument because it "runs counter to" well-settled precedent "and common sense." *Id.* On this point, Judge Chasanow explained:

> Where the relevant administrative rules provide clear grounds for a procedural dismissal of the complaint, it seems disingenuous to suggest that a prisoner ought to appeal such a dismissal even if he knows it was rightly decided and has no legal or factual arguments that the complaint was inappropriately dismissed. At best, this process would be 'so confusing that . . . no reasonable prisoner can use [it].' At worst, this is the type of 'game-playing' that 'thwarts the effective invocation of the administrative process.' <u>In either case, Plaintiff has established that such an administrative remedy was not 'available' to him</u>.

*Id.* (quoting *Ross*, 136 S. Ct. at 1859, 1862) (emphasis supplied).

28

Finally, in *Oakes, supra*, Oakes sued several correctional officers for excessive force. *Oakes*, 2016 WL 6822470, at *1. IIU investigated the incident. *Id.* at *5. Oakes filed an ARP, which the warden dismissed because of the IIU investigation. *Id.* Oakes appealed that dismissal to the Commissioner, who affirmed the warden's dismissal on the same basis. *Id.* Oakes appealed the Commissioner's response to the IGO, which the IGO dismissed because Oakes failed to respond to the IGO's request for additional paperwork. *Id.*

The defendants, through OAG, moved to dismiss the complaint for failure to exhaust. *Id.* at *3. The district court rejected OAG's argument "because an IIU investigation into Oakes' claims foreclosed the ARP process, rendering his administrative remedies unavailable." *Id.* at *4. The court further noted that "Oakes' failure to submit required paperwork to the IGO is of no consequence" because "administrative remedies were already unavailable—when the IIU began investigating Oakes' claims." *Id.* at *5. The court specifically held that Oakes "was not required to appeal dismissal" of an ARP because of IIU involvement "to the IGO in the first place, making any procedural defect with his appeal inconsequential." *Id.*

Here, Dupree, through OAG, has not offered anything to suggest that the outcome should be different for Mr. Younger than it was in *Manzur, Brightwell*, and *Oakes*. Accordingly, this Court should affirm the judgment below.

### d. An "Available" Remedy Cannot Turn on a Prisoner, or IGO's, Refusal to Follow the Law That Mandates Dismissal When IIU Investigates

Perhaps anticipating these problems, Dupree now contends as a fallback that although "an IIU investigation closes the door to the ARP process," a prisoner must still "pursue the claim and seek relief with the IGO" (Appellant Br. at 15).[12] Dupree argues that the IGO was available to Mr. Younger, notwithstanding IIU's simultaneous investigations and DCD 185-003, because Ramon Lee, the self-admitted sole assailant in the Ganiyu Incident, "experienced no difficulty whatsoever understanding and negotiating the administrative process to obtain relief" (Appellant Br. at 17). Dupree is wrong for four reasons.

First, Dupree ignores that Mr. Younger appealed the warden's failures to respond to his ARP to the IGO (JA 395). Second, Dupree ignores that even if IGO considered Mr. Younger's appeal, it was precluded from reaching the merits because of DCD 185-003.VI.N.7, which limits IGO's review to "the rationale for [the warden's] dismissal" (JA 308). Third, Dupree ignores that <u>IGO violated its own regulations</u> when it reached the merits of Mr. Lee's grievance. *See* MD. CODE REGS. § 12.07.01.08(C). Finally, Dupree is really suggesting that IGO can, or should ignore the IIU exclusivity provision and consider a prisoner's grievance even while

---

[12] Dupree did not advance this argument in his motion for summary judgment; at that time, his position was that Mr. Younger's original ARP "was untimely," ECF 186-1 at 9 n.10.

IIU is actively investigating the underlying claim. *See Id.* § 12.11.01.08(B) (an agency head or designee "shall relinquish authority for an investigation undertaken by the IIU, including an investigation initially assigned to an agency head, or designee, that is subsequently assumed by IIU").

Dupree offers no support for his argument. Worse still, Dupree ignores that as we have described in painstaking detail, *supra,* Sec. III(b), our findings show that, when an IIU investigation is underway, the relevant administrators charged with administering the grievance system have routinely—almost unanimously—dismissed ARP complaints and direct IGO complaints as procedurally improper.

Against this backdrop, Dupree cannot seriously maintain that a rational prisoner in Mr. Younger's position would have understood that he had to use one of these procedures (much less *which* of the two) in parallel with an IIU investigation.

On the one hand, if prison administrators are correct when they dismissed grievances because of a parallel IIU investigation, then it follows that no administrative remedy was "available" to Mr. Younger at all. In our view, the prison administrators *were* correct: not only were the administrators best positioned to know how the system actually operated, but their approach accorded with IIU's exclusivity regulation. If this is so, then Dupree, through OAG, is flatly wrong. If even OAG has trouble navigating the interplay between the relevant administrative

procedures, a rational prisoner would be all at sea. Indeed, Maryland judges reviewing this exact issue have rejected the previous arguments by OAG, as Judge Bennett echoed in denying Dupree's motion for summary judgment (JA 563).

On the other hand, if (contrary to fact) Dupree is correct, and the presence of an IIU investigation did not bar an ARP or IGO complaint, then those administrators were wrong when they dismissed prisoner grievances on this basis, for more than a decade prior to, and for eight years following the subject incident. Under this scenario, the result would be very troubling: the very administrators charged with administering the grievance system did not know how the procedures actually worked. It is difficult to conceive of more telling evidence that the system in Maryland was indecipherable; or, "that the rules were so confusing that no reasonable prisoner can use them." *Ross*, 136 S. Ct. at 1859.

Following the attack, Mr. Lee filed an ARP, which the warden dismissed pursuant to DCD 185-003 because of the parallel IIU investigations (JA 377). Mr. Lee appealed that procedural dismissal to the IGO (JA 379). By law, the IGO could only consider the "rationale for dismissal"—*i.e.*, the warden's application of DCD 185-003.VI.N.4(b), (JA 308), which requires a dismissal when IIU investigates the underlying incident. The IGO could not reach the merits of Mr. Lee's ARP because neither the warden, nor the commissioner, had made a merits-based determination. Thus, the IGO could only consider whether the warden's procedural dismissal was

"arbitrary and capricious, or inconsistent with the law."   MD. CODE REGS. § 12.07.01.08(C).

Amazingly, the IGO's decision in Mr. Lee's states that it is "an appeal" from an ARP, yet it goes straight to the merits—" If the Grievant was assaulted and injured, what amount of damages, if any, should be paid to the Grievant?" (JA 380). Nowhere in the decision does IGO apply its statutory standard of review, and nowhere in the decision does IGO even mention "the rationale" for the warden's procedural dismissal.

The fact that IGO reached the merits of Mr. Lee's grievance while IIU simultaneously investigated the underlying claim highlights the opacity of Maryland's administrative remedy procedure.   The very existence of a merits decision on Mr. Lee's complaint either means that the IGO itself cannot discern the IIU/ARP interplay, or that the warden improperly applied DCD 185-003 (which no one argues).   Either way, the process is "opaque," or "so confusing that . . . no reasonable prisoner can use them." *Ross*, 136 S. Ct. at 1860.

In *Ross*, the Supreme Court reviewed identical situations where a prisoner "refused to take a warden's jurisdictional 'no' for an answer, resubmitted his grievance up the chain to the IGO, and there received a ruling on the merits, without any discussion of the ARP/IIU issue." *Ross*, 136 S. Ct. at 1861.  The Court remarked

that this "seemingly unusual process" is "perplexing in relation to normal appellate procedure." *Id.* at 1861–62.

Although the Court could not answer the ultimate question of whether remedies were "available" in that case because the record was undeveloped, the Court nevertheless made clear that the lower courts "**should find**" that remedies are unavailable, even if a prisoner does not file an initial ARP, if: 1) an IIU investigation forecloses the ARP process; 2) the administrative remedy procedure is so confusing that no rational prisoner could make use of it; **or** 3) prison officials thwart the effective invocation of the remedy process, "either on a system-wide basis or in the individual's case." *Id.* at 1862 (emphasis supplied).

The instant case answers each of these questions in the affirmative. Dupree now admits, that an IIU investigation forecloses the ARP process. We have demonstrated herein that Maryland administrative remedy procedure is so confusing that not even the IGO can understand what is required. Indeed, the only way that a prisoner can reach the IGO when IIU investigates the underlying claim is by steadfastly refusing to accept the mandate of DCD 185-003. Finally, Maryland prison administrators thwarted Mr. Younger's attempts to invoke his remedy in the IGO; MRDCC staff confiscated his personal property including his original ARPs, and the IGO dismissed his grievance for failure to exhaust the warden

34

USCA4 Appeal: 21-6423      Doc: 20      Filed: 10/12/2021      Pg: 45 of 66

and commissioner levels of the ARP process even though that process was unavailable as a matter of law.

The administrative procedure at issue here became crystal clear after the enactment of DCD 185-003 in 2008—an IIU investigation forecloses the ARP process. Indeed, every Maryland judge to consider this issue has determined that an IIU investigation bars further administrative relief. And, as recently as May 2021, the IGO is still telling prisoners that "we will not give further administrative consideration to your grievance complaint while essentially the same complaint is pending before the IID." Mem. Ex. 4, ECF 13-6 at 20, *Hinton v. Chronister*, No. GJH-19-3334 (D. Md. May 31, 2021). Yet, OAG repeatedly mischaracterizes how the Maryland grievance procedure actually works.[13] If the procedure is so convoluted that OAG cannot, even now after the well-established jurisprudence interpreting the interplay between the ARP process and IIU's involvement, accurately and concretely describe what Mr. Younger should have done, the remedy was surely too confounding to qualify as "available" under the PLRA.[14]

---

[13] In this case alone, Dupree has argued that DCD 185-003 required Mr. Younger to exhaust the first two steps in the ARP process before submitting his complaint to IGO, ECF 186-1 at 9, while later arguing for the first time on appeal that Mr. Younger should have instead filed his claim directly with IGO in the first place.

[14] Even though Mr. Younger was not required to present his claim to IGO, as explained in Sec. III(b), *supra*, Mr. Younger, nevertheless, did just that. He appealed the warden's failures to respond and procedural dismissal to the IGO. *See* Appellant Br. at 18 (Younger "undisputedly presented a grievance before the IGO").

Accordingly, this Court should affirm the judgment below.

## IV.    The IGO Was Not "Available" to Mr. Younger

Dupree's assertion that Mr. Younger could have brought an original complaint with the IGO is belied by the IGO's own exhaustion requirement.  To begin with, Dupree's IGO argument on appeal thwarts his principal theory of the case at the summary judgment stage.  At summary judgment, Dupree argued that Mr. Younger simply had to follow the "clear and express instructions" on the ARP forms, ECF 186-1 at 13.  However, the ARP instructions are devoid of any reference to IGO (JA 287–88).  Moreover, the ARP appeal instructions, (JA 293–94), explain that the IGO is the final step in the ARP appeal process.  *See also* Appellant Br. at 11 (describing IGO as "the third and final level of the administrative process").  The ARP appeal instructions do not, however, instruct prisoners to file a claim directly with IGO (JA 294).

Further, the IIU exclusivity provision applies with full force to the IGO.  As we have explained, all other agencies within DPSCS must "[r]elinquish authority for an investigation undertaken by the IIU." *Id.* § 12.11.01.08.  The IGO is an agency within the Department and is thus subject to the regulation.  *See* MD. CODE ANN., CORR. SERVS. § 10-202 ("There is an Inmate Grievance Office in the Department."); *see also* Appellant Br. at 13 (IGO "is an agency within the Department").

36

There is nothing in the record to support the notion that Mr. Younger should have filed his claim directly with IGO in the first place.  In fact, the ARP forms make clear that the IGO serves as solely the *appellate* body for an ARP, *see* JA 294 (IGO complaint used "only when you are appealing the Commissioner's response . . . or the failure to respond").  The IGO requires that, "[i]f the administrative remedy procedure applies to a particular situation or occurrence, the grievant shall properly exhaust the administrative remedy procedure before filing a grievance with the Office."  MD. CODE REGS. § 12.07.01.02(D).  On multiple occasions, the IGO has understood this regulation to foreclose a prisoner from bringing a direct complaint in the IGO, *even when* that prisoner's ARP had already been dismissed as procedurally improper in light of an IIU investigation.

In *Wilkerson, supra*, the Attorney General's office plainly recognized that the plaintiff had no administrative remedy once IIU began investigating the underlying claim: Wilkerson sought to complain about the incident to the Inmate Grievance Office, which advised him that he must first present his complaint through the administrative remedy procedure ("ARP").  *See* Mem. Ex. 1, ECF 14-2 at 36-38, *Wilkerson, supra*.  Wilkerson filed an ARP request.  However, his complaint already was being investigated by the Department of Public Safety and Correctional Service's [sic] Internal Investigative Unit, *superceding* [sic] *an ARP investigation*. (Mem. at 3–4, ECF 14-1 at 38, *Wilkerson v. Funner, supra*).

Similarly, in *Brightwell, supra*, the IGO dismissed the plaintiff's grievance as wholly lacking in merit because he first had to exhaust the ARP process. *Id.* 2014 WL 4537766, at *2. As recently as May 2021, in *Hinton, supra*, IGO again confirmed that it would not consider a grievance that was the subject of a contemporaneous IIU investigation. *See* Mem. Ex. 4, ECF 13-6 at 20, *Hinton* (IGO dismissed grievance as "wholly lacking in merit" because IGO "will not give further administrative consideration to [a] grievance complaint while essentially the same complaint is pending before the IID").

Further still, in all of the cases cited in Sec. III(b), *supra*, the district court repeatedly held that an IIU investigation precluded *any* administrative remedy. *See, e.g., Horner*, 2015 WL 1736667, at *8 ("[T]he court is familiar with DOC practice to decline an investigation for an ARP where one is already pending before the IIU."). If filing a direct complaint with IGO was in fact an administrative remedy available to prisoners in these circumstances, one would expect the state lawyers who litigate these matters on a daily basis to make that exhaustion argument. They do not.

Finally, Dupree misses the point when he asserts that the IIU does not qualify as an administrative remedy because it "has no adjudicatory or remedial function."[15]

---

[15] The Supreme Court has eschewed any rigid definition of what qualifies as an administrative remedy; it has said that the procedure need not provide a prisoner the precise remedy he seeks, such as compensation. *See Booth*, 532 U.S. at 736.

Appellant's Br. at 14. The fact is, an IIU investigation occurred. If an IIU investigation is an "administrative remedy," Mr. Younger undeniably exhausted it. If it is not, then no administrative remedy was "available" at all.

What matters is that the IIU investigation barred Mr. Younger from pursuing his claim in the way that Dupree posits he should have—via the traditional ARP process and via an original complaint with the IGO. This is not a case where a prisoner failed to make use of an "available" administrative remedy. The State of Maryland, not Mr. Younger, chose to treat its disciplinary investigation system as *preclusive* of any other administrative remedy. This is not a judge-made doctrine—it is a <u>statutory requirement</u> (JA 308). If Maryland, or its attorneys general, wish to change this legal reality, then they must do so through the Legislature. The fact that Maryland has refused to amend the ARP regulations, which have confounded prisoners and courts since 2008, suggests that Maryland hopes to keep the ARP process opaque. There is simply no other explanation.

Anyway, Mr. Younger *did* file his complaint with the IGO, which the IGO dismissed for failure to exhaust the ARP process (JA 373).[16] However, it is undisputed that the ARP process was not available to Mr. Younger because, as Dupree now admits, the IIU investigation "close[d] the door to the ARP" (Appellant

_____

[16] The IGO's dismissal was "final" for the purposes of judicial review. MD. CODE REGS. § 12.07.01.06(D).

Br. at 15).  This is nothing more than a shell game.  Even if a remedy existed in the IGO, that remedy was not available to Mr. Younger.

Accordingly, this Court should affirm the judgment below.

## V.    This Court Can Affirm the Judgment Below on Another Ground—the IGO Was Required it to Dismiss Mr. Younger's Complaint Because Mr. Younger Was No Longer in the Department's Custody When IGO Received the Complaint

This Court can also find that the IGO was not "available" to Mr. Younger on an alternative ground.  Maryland regulations require the IGO to dismiss a grievance "as wholly lacking in merit" if "[t]he grievant is not in the custody of the Commissioner or the Director of the Patuxent Institution at the time the grievance is received by the Office."  MD. CODE REGS. § 12.07.01.06(B)(1).  IGO received Mr. Younger's grievance on March 28, 2014 (JA 343).  However, Mr. Younger was transferred to federal custody just two days prior on March 26, 2014.  *See* JA 153 and 353 (Offender Traffic History).

We have shown with painstaking detail that the IGO was not available to Mr. Younger once IIU initiated its investigations.  Even if, *arguendo*, every Maryland judge to consider the issue erroneously determined that a parallel IIU investigation rendered administrative remedies unavailable, *See supra* Arg. Sec.III(b), the IGO was nevertheless required to dismiss Mr. Younger's grievance because he was not in the Department's custody when IGO received his grievance.

Thus, the first two stages of the ARP process were clearly unavailable to Mr. Younger, as Dupree now admits, because the IIU investigations "close[d] the door to the ARP." Appellant Br. at 15. Likewise, the IGO was not available to Mr. Younger because the governing regulations precluded IGO from even considering his grievance in the first place. Therefore, no administrative remedies were available to Mr. Younger for the subject attack.

Accordingly, this Court should affirm the judgment below.

### VI.     Oral Argument is Not Necessary Because the Appeal is Frivolous and the Dispositive Issue Has Been Authoritatively Decided

Dupree, through OAG, is simply advancing the same legal theory that "has been repeatedly and summarily rejected" by every judge in Maryland since 2002. *Boggs v. United States*, 829 Fed. Appx. 610, 610 (4th Cir. 2020) (finding appeal "manifestly frivolous" and sanctioning petitioner because the "legal theories have been repeatedly and summarily rejected"). Dupree, through OAG, does not present any new evidence or arguments to show that the ARP process is "available" for the purposes of the PLRA when IIU investigates the underlying claim. Indeed, Dupree's arguments have been repeatedly offered by OAG, and summarily rejected by every Maryland judge to consider the issue. *See supra*, Arg. Sec. III(b).

Thus, there is no good faith basis for Dupree's appeal, as evidenced by the complete dearth of supporting caselaw, evidence, or new legal argument in Dupree's merits brief. In fact, the plain regulatory language concerning the ARP and IIU

interplay and the overwhelming jurisprudence interpreting that language leaves no reasonable ground upon which Dupree can anticipate a reversal.

Dupree's appeal is therefore frivolous under F.R.A.P. 38, and this Court should award Mr. Younger double his costs for defending this appeal. *See, e.g., Bast v. Cohen, Dunn & Sinclair, PC*, 59 F.3d 492, 496 (4th Cir. 1995). Accordingly, oral argument is not necessary because the appeal is frivolous, the dispositive issue has been authoritatively decided, and the facts and legal arguments are adequately presented in the briefs and record. *See* Local Rule 34(a)(2).

## CONCLUSION

For all of the foregoing reasons, this Court should affirm the judgment below and award Mr. Younger double the costs of defending this frivolous appeal, under F.R.A.P. 38.

Respectfully submitted,

/s/ Allen E. Honick
**David Daneman**
**Allen E. Honick**
**WHITEFORD, TAYLOR & PRESTON, L.L.P.**
7 St. Paul Street, Suite 1500
Baltimore, Maryland 21202-1636
(410) 347-8729 – Daneman Direct
(410) 659-6420 – Honick Direct
ddaneman@wtplaw.com
ahonick@wtplaw.com
***Attorneys for Appellee, Kevin Younger***

# ADDENDUM

Code of Maryland Regulations
   Title 12. Department of Public Safety and Correctional Services
      Subtitle 07. Inmate Grievance Office
        Chapter 01. General Regulations (Refs & Annos)

COMAR 12.07.01.02

.02. General Procedures.

Currentness

A. If a State or federal court receives a grievance from a grievant, the State or federal court may refer the grievance to the Office.

B. The Executive Director shall conduct a preliminary review of each grievance properly filed with the Office.

C. If a grievance arises from a disciplinary proceeding, the grievant shall properly exhaust all Division or Patuxent Institution appeal procedures before filing the grievance with the Office.

D. If the administrative remedy procedure applies to a particular situation or occurrence, the grievant shall properly exhaust the administrative remedy procedure before filing a grievance with the Office.

E. The Executive Director, when conducting a preliminary review of a grievance, and the administrative law judge conducting a hearing concerning a grievance shall liberally consider the circumstances of the grievance when determining if the grievance is properly before the Office.

Complete through Maryland Register Vol. 48, Issue 18 dated Aug. 27, 2021. Some sections may be more current, see credits for details.

COMAR 12.07.01.02, MD ADC 12.07.01.02

**End of Document**                    © 2021 Thomson Reuters. No claim to original U.S. Government Works.

Code of Maryland Regulations
    Title 12. Department of Public Safety and Correctional Services
        Subtitle 07. Inmate Grievance Office
            Chapter 01. General Regulations (Refs & Annos)

COMAR 12.07.01.05

.05. Time Limitations and Procedural Bars.

Currentness

A. Except as otherwise provided in this chapter, a grievant shall file a grievance within 30 days of the date that the:

    (1) Situation or occurrence that is the subject of the grievance took place; or

    (2) Grievant knew or should have known of the situation or occurrence that is the subject of the grievance.

B. If the grievance is based on an appeal from the administrative remedy procedure, a grievant shall file the grievance within 30 days of the date that the:

    (1) Grievant received the Commissioner's response concerning the appeal; or

    (2) Commissioner's response to the appeal was due to the grievant.

C. If the grievance is based on an appeal from a disciplinary proceeding, a grievant shall file the grievance within 30 days of the date that the:

    (1) Grievant received the warden's final response to the appeal; or

    (2) Warden's response to the appeal was due to the grievant.

D. If a grievant filed a complaint with a court and the court dismissed the complaint because the grievant did not exhaust administrative remedies, the grievant may file a grievance, based on the subject of the complaint filed with the court, with the Office within 30 days of the date the order of dismissal was entered or filed by the court.

E. The Office may dismiss any disciplinary proceeding appeal and any grievance within the scope of the administrative remedy procedure that has not been properly exhausted through all institutional remedies in a timely manner.

F. A time limitation or procedural bar may be waived for a grievance which represents a continuing problem or for which good cause is shown for a failure to proceed in a timely fashion.

Complete through Maryland Register Vol. 48, Issue 18 dated Aug. 27, 2021. Some sections may be more current, see credits for details.

COMAR 12.07.01.05, MD ADC 12.07.01.05

**End of Document**                    © 2021 Thomson Reuters. No claim to original U.S. Government Works.

---

> Code of Maryland Regulations
> > Title 12. Department of Public Safety and Correctional Services
> > > Subtitle 07. Inmate Grievance Office
> > > > Chapter 01. General Regulations (Refs & Annos)

COMAR 12.07.01.06

.06. Preliminary Review-Executive Director.

Currentness

A. The Executive Director shall conduct a preliminary review of a grievance and determine if the grievance should:

    (1) Be dismissed; or

    (2) Proceed to a hearing.

B. The Executive Director shall dismiss a grievance on preliminary review as wholly lacking in merit if:

    (1) The grievant is not in the custody of the Commissioner or the Director of the Patuxent Institution at the time the grievance is received by the Office;

    (2) The grievance is not brought against any official or employee of the Division or the Patuxent Institution;

    (3) The grievance is not filed within the time constraints and does not meet the exceptions under Regulation .05 of this chapter;

    (4) The grievant did not properly exhaust remedies available under the administrative remedy procedure or the disciplinary proceeding;

    (5) The grievant does not establish a claim for which the Office can grant relief; or

    (6) The grievance is moot.

C. The Executive Director shall notify the grievant, in writing, of the decision to dismiss the grievance on preliminary review.

D. The Executive Director's decision to dismiss a grievance following a preliminary review is final.

---

Complete through Maryland Register Vol. 48, Issue 18 dated Aug. 27, 2021. Some sections may be more current, see credits for details.

COMAR 12.07.01.06, MD ADC 12.07.01.06

**End of Document**     © 2021 Thomson Reuters. No claim to original U.S. Government Works.

Code of Maryland Regulations
    Title 12. Department of Public Safety and Correctional Services
        Subtitle 07. Inmate Grievance Office
            Chapter 01. General Regulations (Refs & Annos)

COMAR 12.07.01.08

.08. Standards of Review.

Currentness

A. General.

(1) At a hearing, the burden of proof is a preponderance of the evidence and rests with the grievant.

(2) A decision at a hearing shall be based on substantial evidence.

B. Grievance Based on Disciplinary Proceedings.

(1) If a grievance is challenging the sufficiency of the evidence presented as part of a disciplinary proceeding:

(a) The administrative law judge shall affirm the decision of the disciplinary proceeding if the administrative law judge determines the original decision was based on substantial evidence.

(b) The administrative law judge may not substitute judgment on factual matters for that of the trier of fact who has the ability to observe witnesses and to weigh credibility.

(2) If a grievance is challenging the interpretation of the law, rules, policy, procedures, or regulations applicable to a disciplinary proceeding, the administrative law judge shall affirm the decision of the disciplinary proceeding if the administrative law judge determines that the interpretation was not erroneous, or an erroneous interpretation was not prejudicial.

(3) If a grievance charges that procedures applicable to a disciplinary proceeding were not followed, the administrative law judge shall:

(a) Determine if applicable procedures were properly followed;

(b) Determine if applicable procedures that were not followed were intended to provide the grievant a procedural benefit;

(c) Determine if the failure to follow applicable procedures made the procedure fundamentally unfair;

(d) Determine if the failure to follow applicable procedures prejudiced the grievant; and

(e) If the administrative law judge determines that applicable procedures were not followed and were intended to provide the grievant a procedural benefit and a failure to follow the applicable procedures made the proceeding fundamentally unfair or otherwise prejudiced the grievant:

(i) Vacate the decision of the disciplinary proceeding; and

(ii) Remand the case for a new disciplinary proceeding, unless a remand could not remedy the procedural deficiency.

(4) If a grievance is challenging the sentence imposed at a disciplinary proceeding, the administrative law judge shall affirm the decision of the disciplinary proceeding if the sentence imposed does not violate any federal or State constitutional, statutory, regulatory, or policy requirement.

C. Grievance Based on Institutional Administrative Decisions.

(1) If a grievance is challenging administrative decisions, including, but not limited to, classification and case management actions, the administrative law judge shall determine if the decision was:

(a) Arbitrary and capricious; or

(b) Inconsistent with law.

(2) The administrative law judge may determine that an administrative decision is arbitrary and capricious or inconsistent with the law if:

(a) The decision maker or makers did not follow applicable laws, regulations, policy or procedures;

(b) The applicable laws, regulations, policy or procedures were intended to provide the grievant a procedural benefit; and

(c) The failure to follow applicable laws, regulations, policy or procedures prejudiced the grievant.

Complete through Maryland Register Vol. 48, Issue 18 dated Aug. 27, 2021. Some sections may be more current, see credits for details.

COMAR 12.07.01.08, MD ADC 12.07.01.08

**End of Document**                                   © 2021 Thomson Reuters. No claim to original U.S. Government Works.

Code of Maryland Regulations
Title 12. Department of Public Safety and Correctional Services
Subtitle 02. Division of Correction
Chapter 28. Administrative Remedy Procedures to Resolve Inmate Complaints (Refs & Annos)

COMAR 12.02.28.11

.11 Procedural Dismissal on Preliminary Review -- Resubmission.

Currentness

A. Incomplete Request -- Eligible for Resubmission.

(1) A dismissal on preliminary review of a Request form may be resubmitted if the procedural dismissal on preliminary review is based on:

(a) An incomplete request form; or

(b) A requirement for more information than that provided on the Request form.

(2) Upon receipt of a Request form from a managing official indicating the request is to be procedurally dismissed on preliminary review because of reasons under § A(1) of this regulation, the facility ARC, within 5 working days of the date of receipt of the request by the managing official, shall:

(a) Sign, date, and return the Request form to the inmate submitting the request including written notification of the procedural dismissal on preliminary review;

(b) Provide instructions for resubmitting the request that include:

(i) Completing a new Request form;

(ii) Complying with instructions provided; and

(iii) Submitting the request to the facility ARC by the date specified in the notice;

(c) Provide notice that:

(i) If the resubmission does not correct issues noted by the facility ARC, the procedural dismissal on preliminary review is final; and

(ii) If the resubmission is not received by the date established by the facility ARC indicated in the notice provided under § A(2) of this regulation, the procedural dismissal on preliminary review is final.

(3) An inmate may appeal a dismissal in accordance with the procedures set forth in Regulation .14 of this chapter.

B. Procedural Dismissal on Preliminary Review -- Ineligible for Resubmission.

(1) A procedural dismissal on preliminary review of a Request form may not be resubmitted if the procedural dismissal on preliminary review is based on a finding by the facility ARC that the:

(a) Inmate complaint is frivolous or malicious;

(b) Inmate complaint is not eligible for resolution under Regulation .04 of this chapter;

(c) Except for provisions under § B(3) of this regulation, request was not submitted within established time requirements;

(d) Inmate complaint has previously been resolved outside the formal resolution process;

(e) Inmate complaint has previously been resolved through the formal resolution process;

(f) Inmate complaint is repetitive of a request previously filed by the inmate through the formal resolution process, and a response was issued as a result of the previous request;

(g) Request is in excess of an authorized limit on the number of requests the inmate may submit; or

(h) Incident in the Request is determined by the facility ARC to be the basis of an investigation being conducted by the Department's Intelligence and Investigative Division.

(2) Upon receipt of a Request form from a managing official, indicating the request is to be procedurally dismissed on preliminary review for reasons under § B(1) of this regulation, the facility ARC, within 5 working days of the date of receipt of the request by the managing official, shall:

(a) Sign, date, and return the Request form to the inmate submitting the request including written notification of the procedural dismissal on preliminary review;

(b) Include information as to the reason for the procedural dismissal on preliminary review;

(c) Include a statement that the procedural dismissal on preliminary review is final; and

(d) Notify the inmate that the decision may be appealed to the Commissioner if the procedural dismissal is based on § B(1)(h) of this regulation and include in the notification the following statement:

"The request is procedurally dismissed at this level. It has been determined that the subject matter of your Request is under investigation by the Department's Intelligence and Investigative Division under case number [insert case number here] and no further action will be taken under the Administrative Remedy Procedures at this level. You may appeal this decision to the Commissioner of Correction."

(3) If the managing official or the facility ARC receives a Request form after the permitted time frame for submitting a Request form, the managing official or facility ARC may:

(a) Accept and process the Request form if the managing official or the facility ARC determines that the inmate has demonstrated that extraordinary circumstances prevented the inmate from submitting the Request form within the required time frame; or

(b) Procedurally dismiss the untimely Request form on preliminary review, with or without referring the untimely Request form to the appropriate facility for follow up independent of the ARP and notify the inmate that the decision may be appealed to the Commissioner.

C. When a Request form is procedurally dismissed on preliminary review, the facility ARC, on the date the request is indexed, shall:

(1) Return the original and one copy of the request form to the inmate filing the request; and

(2) Place a copy in the ARP file maintained by the facility ARC.

D. A procedural dismissal on preliminary review by a managing official, or a designee, may be appealed to the Commissioner according to Regulation .14 of this chapter.

**Credits**
Adopted March 12, 2018.

Complete through Maryland Register Vol. 48, Issue 18 dated Aug. 27, 2021. Some sections may be more current, see credits for details.

COMAR 12.02.28.11, MD ADC 12.02.28.11

**CERTIFICATE OF COMPLIANCE**

1.    This brief complies with type-volume limits because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) (cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificates of counsel, addendum, attachments):

[ X ] this brief contains [*9,867*] words.

[    ] this brief uses a monospaced type and contains [*state the number of*] lines of text.

2.    This brief complies with the typeface and type style requirements because:

[ X ] this brief has been prepared in a proportionally spaced typeface using [*Microsoft Word 365*] in [*14pt Times New Roman*]; *or*

[    ] this brief has been prepared in a monospaced typeface using [*state name and version of word processing program*] with [*state number of characters per inch and name of type style*].

Dated: <u>October 12, 2021</u>          <u>/s/ Allen E. Honick</u>
                                                      *Counsel for Appellee*

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on this 12th day of October, 2021, I caused this Brief of Appellee to be filed electronically with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF users:

> Shelly E. Mintz
> Karl A. Pothier
> Office of the Attorney General of Maryland
> 217 East Redwood Street, 22nd Floor
> Baltimore, Maryland  21202
> (410) 230-3137
> *Counsel for Appellant*

/s/ Allen E. Honick
*Counsel for Appellee*