No.  21-6423

_____

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT**

_____

**KEVIN YOUNGER**,

*Plaintiff-Appellee*,

**v.**

**NEIL DUPREE**,

*Defendant-Appellant*.

_____

On Appeal from the United States District Court
for the District of Maryland
(Richard D. Bennett, District Judge)

_____

**REPLY BRIEF OF APPELLANT**

_____

BRIAN E. FROSH
Attorney General of Maryland

KARL A. POTHIER
SHELLY E. MINTZ
Assistant Attorneys General
217 E. Redwood Street
Baltimore, Maryland  21202
(410) 230-3135
karl.pothier@maryland.gov
shelly.mintz@maryland.gov

November 23, 2021                    Attorneys for Appellant

# TABLE OF CONTENTS

Page

REPLY BRIEF OF APPELLANT ................................................................. 1

I.   THIS COURT SHOULD REVIEW THE DISTRICT COURT'S DENIAL OF
     MR. DUPREE'S EXHAUSTION DEFENSE. ............................................ 1

II.  THE DISTRICT COURT ERRONEOUSLY CONCLUDED THAT THE
     ADMINISTRATIVE PROCESS WAS TOO OPAQUE TO BE CAPABLE OF
     USE BY MR. YOUNGER. ................................................................... 5

III. MR. YOUNGER DID NOT PROPERLY EXHAUST HIS AVAILABLE
     ADMINISTRATIVE REMEDIES. ......................................................... 11

CONCLUSION .................................................................................... 13

CERTIFICATE OF COMPLIANCE WITH RULE 32(a) ................................... 14

PERTINENT STATUTES AND REGULATIONS ............................................. 15

CERTIFICATE OF SERVICE .................................................................... 17

# TABLE OF AUTHORITIES

Page

## Cases

*Brightwell v. Hershberger*, No. DKC-11-3278,
    2016 WL 4537766 (D. Md. Aug. 31, 2016) ........................................7

*Bunn v. Oldendorff Carriers GmbH & Co. KG*, 723 F.3d 454 (4th Cir. 2013) ........3

*Carmichael v. Buss,* No. TDC-14-3037,
    2017 WL 2537225 (D. Md. June 9, 2017)..........................................8

*Chesapeake Paper Prod. Co. v. Stone & Webster Eng'g Corp.*,
    51 F.3d 1229 (4th Cir. 1995) .......................................... 2-5

*Custis v. Custis*, 851 F.3d 358 (4th Cir. 2017)............................................1

*Donahue v. Wilder*, 824 Fed. App'x 261 (5th Cir. 2020)................................6

*Eshelman v. Puma Biotech, Inc.*, 2 F.4th 276 (4th Cir. 2021)..................................4

*Holley v. Northrop Worldwide Aircraft Servs., Inc.*, 835 F.2d 1375
    (11th Cir. 1988).........................................................3

*Jones v. Bock*, 549 U.S. 199 (2007)............................................1

*Muhammed v. Mayfield*, 933 F.3d 993 (8th Cir. 2019) ............................................6

*Oakes v. Department Pub. Safety and Corr. Servs.*, No. GLR-14-2002,
    2016 WL 6822470 (D. Md. Nov. 18, 2016) ........................................7

*People for the Ethical Treatment of Animals, Inc. v. Tri-State Zoological
    Park of W. Md., Inc.,* 843 F. App'x 493 (4th Cir.), *cert. denied sub nom.*,
    Tri-State Zoological Park of W. Md., Inc. v. People for the Ethical ,
    Treatment of Animals, Inc.*, 141 S. Ct. 2854 (2021).............................5

*Pozo v. McCaughtry*, 286 F.3d 1022 (7th Cir. 2002) ............................................11

*Rekhi v. Wildwood Indus., Inc.*, 61 F.3d 1313 (7th Cir. 1995)................................4

*Ross v. Blake*, 136 S. Ct. 1850 (2016) ........................................ 2, 5, 7-11

*Varghese v. Honeywell Int'l*, 424 F.3d 411 (4th Cir. 2005) ................................ 3-5

*Wilson v. Zubiate*, 718 Fed. App'x 479 (9th Cir. 2017) ............................................6

*Woodford v. Ngo*, 548 U.S. 81 (9th Cir. 2006) ................................................. 11, 13

**Statutes**

42 U.S.C. § 1997e ....................................................................................1

**Regulations**

COMAR 12.07.01.08A ............................................................................10

COMAR 12.07.01.08C ............................................................................10

COMAR 12.07.01.08C(1) ........................................................................10

COMAR 12.11.01.08B ..............................................................................9

No. 21-6423

———————————————

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

———————————————

**KEVIN YOUNGER**,

*Plaintiff-Appellee*,

**v.**

**NEIL DUPREE**,

*Defendant-Appellant*.

———————————————

On Appeal from the United States District Court
for the District of Maryland
(Richard D. Bennett, District Judge)

———————————————

**REPLY BRIEF OF APPELLANT**

———————————————

## I.    THIS COURT SHOULD REVIEW THE DISTRICT COURT'S DENIAL OF MR. DUPREE'S EXHAUSTION DEFENSE.

In the proceedings below, Mr. Dupree asserted the affirmative defense of Mr.

Younger's failure to properly exhaust his available administrative remedies, as

required by the Prisoner Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e.[1] (J.A.

---

[1] "[F]ailure to exhaust is an affirmative defense that the defendant must raise." *Custis v. Custis*, 851 F.3d 358, 361 (4th Cir. 2017) (citing *Jones v. Bock*, 549 U.S. 199 (2007)).

242.)  Following the close of discovery, Mr. Dupree moved for summary judgment on this defense, but the district court denied the motion on the narrow ground that, in its view, the interplay between the administrative remedy regime available to Maryland inmates and a parallel investigation by the Internal Investigative Unit ("IIU") rendered the administrative regime "too 'opaque' to be 'capable of use'" and, thus, unavailable as a matter of law to Mr. Younger.  (J.A. 564 (quoting *Ross v. Blake*, 136 S. Ct. 1850, 1859).)  The court's decision wholly extinguished Mr. Younger's affirmative defense, as the court based its decision solely on the undisputed existence of the IIU's investigation and its own review of the applicable regulations and internal directives.  There existed no additional evidence relevant to the court's finding that would have warranted its reconsideration of the issue either at or after trial.

Mr. Dupree requests that this Court exercise jurisdiction over his appeal and address the merits of the district court's narrowly based rejection of his affirmative defense on summary judgment.  In so doing, Mr. Dupree is mindful that this Court ordinarily "will not review, under any standard, the pretrial denial of a motion for summary judgment after a full trial and final judgment on the merits," when, as here, the issue was not been presented to the district court through a post-trial motion.  *Chesapeake Paper Prod. Co. v. Stone & Webster Eng'g Corp.*, 51 F.3d 1229, 1237 (4th Cir. 1995).  Mr. Dupree is further aware that this Court subsequently extended

*Chesapeake* to its review of questions of law. *Varghese v. Honeywell Int'l*, 424 F.3d 411, 423 (4th Cir. 2005). Nevertheless, Mr. Dupree requests that the Court revisit the extension of *Chesapeake* in *Varghese*, and more specifically the suggestion by the dissent in *Varghese* that *Chesapeake* does not and should not preclude appellate review of purely legal defenses extinguished on summary judgment. *Id*. at 424-27 (Motz, J., dissenting).

"[T]he evidentiary concerns discussed in *Chesapeake* are simply not at issue when a party seeks to reassert on appeal a legal *defense* that the court below rejected at the summary judgment stage." *Id.* at 425 (Motz, J., dissenting) (emphasis in original). *Chesapeake*'s rule is derived from the concern that allowing review essentially gives the losing party a choice of records (one on summary judgment and one at the close of all evidence) and thus undermines the trial itself. *Chesapeake*, 51 F.3d at 1233-37; *cf. Holley v. Northrop Worldwide Aircraft Servs., Inc.,* 835 F.2d 1375, 1377 (11th Cir. 1988) ("Summary judgment was not intended to be a bomb planted within the litigation at its early stages and exploded on appeal[.]"). Here, Mr. Dupree's affirmative defense was fully and finally resolved at summary judgment, and nothing could have occurred at the merits trial to change that disposition. This Court's consideration of Mr. Dupree's appeal, therefore, does not work the injustice on Mr. Younger that *Chesapeake* is designed to prevent. Indeed, "there is no unfairness in allowing a party to reassert on appeal *a legal defense*

rejected as a basis for summary judgment . . . because by definition a legal defense provides a basis to avoid liability for an otherwise meritorious claim." *Varghese*, 424 F.3d at 425-26 (Motz, J., dissenting) (emphasis in original) (describing rationale for rule contrary to *Chesapeake* advanced *Rekhi v. Wildwood Indus., Inc.*, 61 F.3d 1313, 1318 (7th Cir. 1995)).

Prohibiting review, on the other hand, does work an injustice. It perpetuates the extinction of Mr. Dupree's potentially meritorious legal defense to Mr. Younger's claims simply because Mr. Dupree—after the merits trial and without any new facts in hand—did not ask the district court to revisit its earlier, purely legal, decision. Had the district court expressly granted summary judgment to plaintiff on the exhaustion issue, no post-trial motion would have been necessary and appealability would not be an issue. *See Eshelman v. Puma Biotech, Inc.*, 2 F.4th 276, 280 n.1 (4th Cir. 2021). Here, however, the district court effectively, albeit silently, granted summary judgment to plaintiff, so Mr. Dupree was, under *Chesapeake* and *Varghese*, required to make a post-trial motion in order to preserve his defense on appeal. That motion, unrelated to the matters resolved in the just-completed merits trial, would have been futile and a waste of judicial resources, as it would not have been predicated on any new or additional evidence that could have prompted the court to revisit its earlier determination. Rather, it would simply have been made because, under *Chesapeake* and *Varghese*, it had to be made. Such

prejudicial form over substance in relation to the preservation of a purely legal defense is "unwise and unjust." *Varghese*, 424 F.3d at 427 (Motz, J., dissenting). Although not every effort to appeal from a decision on summary judgment will give "reason to deviate from [*Chesapeake*'s and *Varghese*'s] rule," *People for Ethical Treatment of Animals, Inc. v. Tri-State Zoological Park of W. Maryland, Inc*., 843 F. App'x 493 (4th Cir.), *cert. denied sub nom., Tri-State Zoological Park of W. Maryland, Inc. v. People for the Ethical Treatment of Animals, Inc*., 141 S. Ct. 2854 (2021), this one surely does.

## II. THE DISTRICT COURT ERRONEOUSLY CONCLUDED THAT THE ADMINISTRATIVE PROCESS WAS TOO OPAQUE TO BE CAPABLE OF USE BY MR. YOUNGER.

The only administrative exhaustion-related issue decided by the district court on summary judgment and which is now before this Court is whether Maryland's administrative regime, due to its interplay with a parallel IIU investigation, was so opaque as to render it incapable of use by Mr. Younger. On this point, "[t]he administrative] procedures need not be sufficiently 'plain' as to preclude any reasonable mistake or debate with respect to [their] meaning." *Ross*, 136 S. Ct. at 1859. On the contrary, the procedures only must be "knowable by an ordinary prisoner in [the inmate-plaintiff's] situation." *Id*. at 1862.

As is evident from the Supreme Court's guidance, the crucial component of a court's opacity inquiry is a plaintiff's actual experiences with the administrative

process in question, as several appellate courts have held. *Id*.; *see Donahue v. Wilder*, 824 Fed. App'x 261, 267 (5th Cir. 2020) (observing that an "ordinary prisoner could make sense of what the grievance procedure requires" because, in part, the prisoner himself "demonstrated past compliance with . . . [that p]rocedure"); *Muhammed v. Mayfield*, 933 F.3d 993, 1001 (8th Cir. 2019) (concluding that "administrative scheme was not practically incapable of use" where it "was available to Muhammed (as is evident from the four grievances he did file)"); *Wilson v. Zubiate*, 718 Fed. App'x 479, 482 (9th Cir. 2017) (holding, based on the plaintiff-prisoner's own awareness of and experience with administrative process, that, "[o]n these facts, we cannot say that the administrative scheme was so confusing that it was 'essentially unknowable'"). The district court, however, wholly disregarded Mr. Younger's interactions with the administrative regime, as it did with respect to another prisoner undisputedly in his "situation," Mr. Lee. Indeed, Mr. Younger evidenced no confusion as to what needed to be done to advance his administrative claims. (J.A. 342-73.) The same is true of Mr. Lee, who actually saw the process through to its conclusion and received a monetary award. (J.A. 375-91.) Thus, it is beyond question that the administrative process was "knowable by an ordinary prisoner" such as Mr. Younger, and that the district court's holding to the contrary was incorrect.

The post-*Ross* district court cases relied upon by the district court (J.A. 563) and primarily cited by Mr. Younger, *Brightwell v. Hershberger,* No. DKC-11-3278, 2016 WL 4537766 (D. Md. Aug. 31, 2016), and *Oakes v. Dep't Pub. Safety and Corr. Servs.,* No. GLR-14-2002, 2016 WL 6822470 (D. Md. Nov. 18, 2016), Brief of Appellee ("Br.") 27-29, similarly failed to account for the inmate-plaintiff's actual experiences.   In each, the inmate-plaintiff proceeded through the administrative process and reached the Inmate Grievance Office ("IGO") unhindered by any confusion caused by the structure of the administrative regime.   In *Brightwell*, the inmate-plaintiff proceeded through the process to the IGO, where his complaint cleared preliminary review and went to a hearing on the merits.[2] 2016 WL 4537766, at *2.   And in *Oakes*, the inmate "appealed the dismissal of his . . . [administrative remedy procedure complaint] to the IGO," which later dismissed the grievance because the inmate "never responded to the IGO's request for required paperwork." 2016 WL 6822470, at *5.   In each case the administrative remedies were demonstrably capable of use and, in fact, were used, yet the district court erroneously opted to ignore those facts, relying, like the district court here, on its *own* assessment

---

[2] The plaintiff then abandoned his claim due to the unavailability of witnesses he wished to examine.  *Brightwell,* 2016 WL 4537766, at *2.

of the exhaustion regime as too opaque to require the inmate-plaintiff's adherence to that regime, as the PLRA requires.[3]

These district court decisions, and the decision below, cannot be squared with the appellate decisions of the Fifth, Eighth, and Ninth Circuits, all of which conclude that—under the Supreme Court's description of what should control a court's review of an administrative remedy regime's opacity for exhaustion purposes—a regime cannot be deemed "unknowable" where both the inmate-plaintiff and another inmate in his precise "situation," *Ross*, 136 S. Ct. at 1862, indisputably knew how to seek relief under the regime.   Nor can administrative remedies be deemed unavailable to an inmate as a matter of law when the same inmate and another in precisely his "situation" advanced a grievance through an administrative regime where—as Mr. Lee definitively experienced—administrative remedies clearly *were* available.

In his appellate brief, Mr. Younger cites various aspects of Maryland's administrative regime that might make it seem legally complex or difficult to navigate after an IIU investigation has begun.   Appellate arguments like these, however, do not control the opacity analysis; it is guided instead by the experiences

---

[3] The district court also cited *Carmichael v. Buss*, No. TDC-14-3037, 2017 WL 2537225, at *4-6 (D. Md. June 9, 2017), but the outcome in that case appears to have been substantially dependent on certain verbal guidance provided to the inmate by correctional staff, thereby placing it within the scope of the third manner by which an administrative process could be deemed unavailable under *Ross* (prison officials' actively thwarting an inmate's attempted exhaustion).

8

of the "ordinary prisoner in [the inmate-plaintiff's] situation." *Id*. at 1862.  In this case, those experiences demonstrated that the administrative process was, as a matter of undisputed fact, knowable to both Mr. Younger, a self-described "old convict" familiar with the "system" and its "paperwork" (J.A. 394-96), and an inmate in his same "situation," Mr. Lee.

The various reasons identified by Mr. Younger as supporting the notion that Maryland's system is "too confounding to qualify as 'available' under the PLRA," Br. 35, do not withstand scrutiny.  For instance, he argues that, because of what he calls "the IIU exclusivity provision," the IGO is forbidden from considering a grievance once the IIU commences an investigation.  Br. 30-31, 36.  The cited provision, Code of Maryland Regulations ("COMAR") 12.11.01.08B, however, only instructs the agencies within the Department of Public Safety and Correctional Services to "relinquish authority *for an investigation* undertaken by the IIU," *id*., meaning that the agencies are to hand over the reins of any investigation they may be conducting to the IIU when it becomes involved.  The IGO is an adjudicative, and not an investigative body, so this provision facially does not apply to its review and handling of grievances.

Similarly, Mr. Younger asserts "[t]he fact that IGO reached the *merits* of Mr. Lee's grievance while IIU simultaneously investigated the underlying claim highlights the opacity of Maryland's administrative remedy procedure," Br. 33

9

(emphasis added), because under COMAR 12.07.01.08C it "could only consider whether the warden's procedural dismissal was 'arbitrary and capricious, or inconsistent with the law,'" Br. 32-33. But Mr. Younger's interpretation of the regulation is incorrect. It is true that, "[i]f a grievance is challenging administrative decisions, including, but not limited to, classification and case management actions, the administrative law judge shall determine if the decision was . . . [a]rbitrary and capricious; or . . . [i]nconsistent with law." COMAR 12.07.01.08C(1). But when, as here, the grievance is *not* challenging an administrative decision and instead is seeking redress for harm purportedly sustained at the hands of correctional staff, then the merits are indeed addressed at a hearing where "the burden of proof is a preponderance of the evidence and rests with the grievant,' and the ultimate decision "shall be based on substantial evidence." COMAR 12.07.01.08A. This is exactly what happened with Mr. Lee (J.A. 379-91), which again demonstrates that the process was in fact knowable.

At bottom, therefore, the district court had before it undisputed and compelling evidence that the administrative remedy regime was *not* so opaque as to render it unavailable to an ordinary prisoner like Mr. Younger. In opting to disregard this evidence and instead rely solely on its *own* view of the regime for its opacity finding, the district court departed from the Supreme Court's guidance in *Ross* and exercised discretion that it does not have under the PLRA. *See Ross*, 136 S. Ct. at

10

1858 (PLRA does not contain a "special circumstances" exception that permits courts to exercise discretion and decide "that exhaustion would be unjust or inappropriate in a given case").

### III.  MR. YOUNGER DID NOT PROPERLY EXHAUST HIS AVAILABLE ADMINISTRATIVE REMEDIES.

A common thread running throughout Mr. Younger's appellate submission is the notion that, even if this Court were to find that administrative remedies were "available" to him, as contemplated by *Ross*, he nevertheless fully exhausted those remedies when he filed with his Warden and then with the IGO a claim regarding the assault.  This is incorrect, as much more is required to achieve the exhaustion mandated by the PLRA.

"The PLRA exhaustion requirement requires proper exhaustion."  *Woodford v. Ngo*, 548 U.S. 81, 93 (2006).  "[P]roper exhaustion of administrative remedies . . . 'means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits).'"  *Id.* at 90 (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)) (emphasis in original).  It "demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings."  *Woodford*, 548 U.S. at 90-91.

Mr. Lee's undisputed experience with the administrative remedy regime reflects what "proper exhaustion" looks like in circumstances where an inmate has

an excessive force claim against staff and the IIU is simultaneously conducting an investigation into the allegations supporting that same claim.  Mr. Lee filed a request for administrative remedy with his Warden.  (J.A. 377-78.)  After being advised that, because of the IIU investigation, "no further action [would] be taken within the [two-step] ARP process," he promptly submitted a grievance to the IGO, at the same time advising the agency of the basis for the Warden's disposition of his complaint.  (J.A. 375.)  Satisfied that Mr. Lee's grievance was procedurally sound, the IGO then adjudicated Mr. Lee's claim by holding a hearing before an administrative law judge, who subsequently issued a decision on the merits favorable to Mr. Lee.  (J.A. 379-91.)

Mr. Younger, by contrast, did not properly exhaust his claim.  No administrative decision-maker addressed the merits of his excessive force claim because Mr. Younger did not adhere to the administrative scheme so easily navigated by Mr. Lee.  When Mr. Younger filed his grievance with the IGO nearly six months after the assault, the materials he submitted were ambiguous and lacking the necessary supporting documentation.  The IGO made numerous requests to him to obtain further information that would assist it in its preliminary review of his grievance.  (J.A. 354-55, 359-60, 366-67.)  Ultimately, however, the IGO dismissed the grievance because (i) Mr. Younger neither demonstrated that he properly had exhausted the two-step ARP process before resorting to the IGO nor "provided a

basis for waiving the ARP exhaustion requirement," as Mr. Lee had; and (ii) the IGO

itself could not independently verify exhaustion.  (J.A. 372-73.)  This is not "proper

exhaustion" of a claim under the PLRA.  *See Woodford,* 548 U.S. at 90-91.

## CONCLUSION

The district court's February 4, 2020 entry of judgment, based on its earlier

determination on summary judgment that Mr. Younger had exhausted his

administrative remedies, should be reversed.

Respectfully submitted,

BRIAN E. FROSH
Attorney General of Maryland

KARL A. POTHIER
SHELLY E. MINTZ
Assistant Attorneys General
217 E. Redwood Street
Baltimore, Maryland  21202
(410) 230-3135
karl.pothier@maryland.gov
shelly.mintz@maryland.gov

Attorneys for Appellant

13

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

1.      This brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) because this brief contains 2,801 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in fourteen point, Times New Roman.

## PERTINENT STATUTES AND REGULATIONS

**United State Code**

**42 U.S.C. § 1997e.  Suits by prisoners**

(a) Applicability of administrative remedies

No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.


**Code of Maryland Regulations ("COMAR")**

**COMAR 12.07.01.08**

A.  General.

    (1)  At a hearing, the burden of proof is a preponderance of the evidence and rests with the grievant.

    (2)  A decision at a hearing shall be based on substantial evidence.

\*  \*  \*

C.  Grievance Based on Institutional Administrative Decisions.

    (1)  If a grievance is challenging administrative decisions, including, but not limited to, classification and case management actions, the administrative law judge shall determine if the decision was:

        (a)  Arbitrary and capricious; or

        (b)  Inconsistent with law.

**COMAR 12.11.01.08**

An agency head or a designee shall:

A.  Notify the Director or a designee, and if required, local law enforcement, of an allegation required to be reported under Regulation .05 of this chapter;

15

B.  Relinquish authority for an investigation undertaken by the IIU, including an investigation initially assigned to an agency head, or a designee, that is subsequently assumed by the IIU;

C.  Provide to the IIU investigator unrestricted access to all areas of the agency head's facility;

D.  Ensure that agency employees cooperate with the IIU investigator;

E.  If requested by the IIU, assign agency employees to assist the IIU investigator and serve as an IIU liaison;

F.  Coordinate agency employee, nonagency employee, and inmate interviews requested by an IIU investigator;

G.  Provide reports, documents, and information requested by an IIU investigator;

H.  Ensure confidentiality of all reports, records, investigative activities, and documents relating to an IIU investigation;

I.  Provide workspace within the facility for use by the IIU personnel during an investigation;

J.  Secure and preserve the scene of an incident until released to an IIU investigator or appropriate law enforcement personnel; and

K.  Be accountable for investigations conducted at the agency level ensuring that:

    (1)  Where appropriate, investigative activities are conducted according to requirements for an IIU investigator;

    (2)  Required reports are completed; and

    (3)  Investigative reports are forwarded to the Director, or a designee, for review, filing, and retention.

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT**

KEVIN YOUNGER,                    *

       Plaintiff-Appellee,        *

   v.                           *        No.  21-6423

NEIL DUPREE,                      *

       Defendant-Appellant.      *

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

**CERTIFICATE OF SERVICE**

I certify that on this 23rd day of November, 2021, the Reply Brief of Appellant was filed electronically and served on counsel of record for the appellee, David Daneman, Esquire, and Allen E. Honick, Esquire.



                    /s/ Karl A. Pothier

                    _____

                    Karl A. Pothier